**Henry F. FULTON, Jr.,
Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 84-1469.

United States Court of Appeals, Tenth Circuit.

April 16, 1985.

Eric G. Melders, Oklahoma City, Okl. (Jack Gray, on the brief, Oklahoma City, Okl.), for plaintiff-appellant.

Mary K. Biester, Dept. of Health and Human Services, Dallas, Tex. (William S. Price, U.S. Atty., and Robert D. Dennis, Asst. U.S. Atty., on the brief, Oklahoma City, Okl.), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and DOYLE, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Henry J. Fulton, Jr., applied for disability insurance benefits under 42 U.S.C. § 423(a)(1) (1982), and supplemental security income benefits under 42 U.S.C. § 1382(a)(1) (1982) in April 1982, alleging that he had been disabled since October 25, 1981, due to a mental impairment.[1] His application was denied initially and upon reconsideration. Fulton then obtained a hearing before an administrative law judge (ALJ), who received Fulton's medical records and heard testimony from Fulton, Fulton's father, and Dr. Nolan Armstrong, a psychiatrist.

The record reveals that Fulton was born in 1948, is married, and is the father of three sons. He did not finish high school, and worked for fourteen years washing horse trailers with lacquer thinner and paint thinner and spray painting them. He inhaled the fumes to the point of daily intoxication. According to Dr. Vincent, Fulton's family physician, after two years of increasing problems from inhaling these substances, Fulton suffered a severe reaction in November 1975. Dr. Vincent described Fulton at that time as suffering from both acute contact dermatitis and acute systemic toxic effects, including severe frontal headaches, nausea, vertigo, profound weakness, and "blackout spells." Although Dr. Vincent indicated in 1975 that it was absolutely necessary for Fulton to avoid further contact with the substances he was using, Fulton continued to try to work, despite suffering from hyperventilation, chest pain, and dyspnea. Fulton was finally unable to maintain regular employment and had a nervous breakdown in 1979.

Following this breakdown, Fulton was hospitalized under the care of a psychiatrist, Dr. Maud Staveley-O'Carroll, for an extended period of time. After his discharge, he made two attempts to work but could not hold on to a job for more than a

---

1. "In determining whether an individual is disabled, 'the relevant law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental income benefits, [and] we treat the two claims together.'" *Knipe v. Heckler,* 755 F.2d 141, 145 n. 8 (10th Cir.1985) (quoting *Davis v. Heckler,* 748 F.2d 293, 294 n. 2 (5th Cir.1984)).

day. He became increasingly frustrated and angry and withdrew from his family to keep from venting his anger on them. Fulton was readmitted to the hospital in April 1980, and Dr. Staveley-O'Carroll requested other psychologists and physicians to examine Fulton in an attempt to determine whether his mental problems were caused by exposure to toxic substances. The reports are inconclusive. Fulton was found to have trouble reading, spelling, and doing simple arithmetic, although these problems were of long standing. A neuropsychological examination revealed recently acquired disturbance in memory function and problems in sustaining concentration which may or may not have been due to the toxic substances. In addition, the neuropsychologist found Fulton to be in considerable psychiatric distress, constantly fearful of smothering to death. Dr. Stavely-O'Carroll reported that Fulton described

"episodes of hyperventilation and a feeling that he could not breathe accompanied by tachycardia and pains in the chest. Episodes like this were triggered by the site [sic] of smoke, hot room, or water. Between episodes the patient experienced distortion of visual and auditory perception and hallucinated. The voice he heard told him that he was going to die and that he would be smothered or drowned and this hallucination apparently had alot to do with precipitation of his apparent anxiety attacks."

Rec., vol. II, at 144. Dr. Stavely-O'Carroll diagnosed psychosis of unknown origin.

Fulton continued to have problems and to seek help. He went to the Scott and White Clinic in Temple, Texas for an evaluation and was diagnosed as having a somatization disorder, a condition in which physiologic disfunction, often resulting in structural changes, is caused by an exaggerated emotional state. In September 1982, he was examined by Dr. Armstrong, as well as by a neuropsychologist and a psychologist. In testifying before the ALJ, Dr. Armstrong noted that Fulton hears voices which criticize him, urge suicide, and accuse his wife of unfaithfulness. Dr. Armstrong stated that Fulton is suspicious and

hostile, has withdrawn from others, and has attempted suicide many times. After reviewing his own examination of Fulton and the other medical evidence, Dr. Armstrong concluded that Fulton fell under the criteria for functional nonpsychotic disorders set out in 20 C.F.R. § 404, subpt. P, app. 1 (1984) (hereinafter Appendix 1). Dr. Armstrong concluded that Fulton's condition is severe, and that "[i]t is quite apparent that he is unable to work and has been unable to work for the past year and it's unlikely that he will be able to work in the future." *Id.* at 50.

Fulton also testified before the ALJ. He described hearing voices, hallucinating, and feelings of panic. He stated that he had beaten his wife when the voices told him she was unfaithful, and that the voices sometimes send him on trips and sometimes tell him to kill himself. He stated that he could not stand to be around his family or anyone else.

Following the hearing, the ALJ sent the documentary medical evidence to Dr. Schneider, a medical adviser under contract with the Government, who did not examine Fulton or review a transcript of the hearing. Dr. Schneider concluded that Fulton did not satisfy the requirements for a disabling functional nonpsychotic disorder. The ALJ adopted Dr. Schneider's report as his own and rejected Dr. Armstrong's opinion that Fulton was disabled under the criteria in Appendix 1. The ALJ found that Fulton was not disabled by applying the medical-vocational guidelines in 20 C.F.R. § 404, subpt. P, app. 2 (1984) (hereinafter Appendix 2).

Fulton's request for administrative review by the Appeals Council was denied and he filed this suit for judicial review pursuant to 42 U.S.C. § 405(g) (1982). The parties agreed to proceed before a United States Magistrate under 28 U.S.C. § 636(c) (1982) and to take any appeal directly to this court under section 636(c)(3). In reviewing the administrative record, the Magistrate properly disregarded the findings of Dr. Schneider. "An ALJ's use of a post-

hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report." *Allison v. Heckler,* 711 F.2d 145, 147 (10th Cir. 1983). However, the Magistrate found that the ALJ's decision was nonetheless supported by substantial evidence and affirmed the finding of no disability.

On appeal Fulton contends that: 1) the ALJ erred in concluding that he was not disabled under the criteria for functional nonpsychotic disorders set out in Appendix 1; 2) the ALJ erred in considering his impairments individually instead of considering their combined effect; 3) the ALJ erred in rejecting his subjective complaints of disabling pain; and 4) the ALJ erred in applying the medical-vocational guidelines of Appendix 2 to a mental impairment. Because we agree with Fulton's first contention, we need not reach the other issues.

The regulations provide that if a claimant has an impairment which can be expected to last not less than twelve months and is listed in Appendix 1, he will be found disabled without considering his age, education, and work experience. *See* 20 C.F.R. § 404.1520(d) (1984). Section 12.04 of Appendix 1 lists the criteria for establishing a disabling functional nonpsychotic disorder.

"A. Manifested persistence of one or more of the following clinical signs:

1. Demonstrable and persistent structural changes mediated through psychophysiological channels (e.g., duodenal ulcer); or

2. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

3. Persistent depressive affect with insomnia, loss of weight, and suicidal preoccupation; or

4. Persistent phobic or obsessive ruminations with inappropriate, bizarre, or disruptive behavior; or

5. Persistent compulsive, ritualistic behavior; or

6. Persistent functional disturbance of vision, speech, hearing, or use of a limb with demonstrable structural or trophic changes; or

7. Persistent, deeply ingrained maladaptive patterns of behavior manifested by either:

a. Seclusiveness or autistic thinking; or

b. Pathologically inappropriate suspiciousness or hostility;

B. Resulting persistence of marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people."

A claimant must satisfy at least one of the elements in section A *and* also satisfy section B.

The ALJ's finding that Fulton had not satisfied the criteria in section 12.04 will be upheld if it is supported by substantial evidence. Evidence is substantial if it is more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Broadbent v. Harris,* 698 F.2d 407, 414 (10th Cir.1983).

"This oft-cited language is not a talismanic formula for adjudication; the determination is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians) —or if it really constitutes not evidence but mere conclusion.'"

*Knipe,* 755 F.2d 141, 145 (10th Cir.1985) (quoting *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983)).

In a motion to remand filed subsequent to the briefs on appeal, and again in oral argument, the Secretary conceded that Fulton satisfies section A and "comes close" to meeting section B.[2] Upon a careful review

---

2. In the motion to remand the Secretary points out that the Social Security Disability Reform Act of 1984, Pub.L. 98–460, directs her to revise the criteria for mental impairments set out in Appendix 1. She urges us to remand this case to allow further consideration of Fulton's men-

of the record, we find ample evidence that Fulton has satisfied section B as well.

Dr. Armstrong testified that Fulton exhibited pathologically inappropriate suspiciousness and hostility to others as shown by his history of frequent fights and his feelings of suspicion towards people for no good reason. The medical reports by those who examined Fulton contain repeated references to Fulton's depression, his feelings of hostility, suspicion, aggression, and anger, and his inability to maintain a normal relationship with his family. The psychologist who examined Fulton at the Scott and White Clinic stated that a person with Fulton's diagnosis is likely to be hypersensitive, somewhat suspicious, and to harbor hostility toward those not perceived as offering attention and support. He recited Fulton's history of hypersensitivity, aggressive behavior, and vocational adjustment difficulties, noting that the only way Fulton can avoid fighting is to remain sitting at home in a chair.

Fulton testified that he cannot tolerate being around people, that he never goes anywhere, and that he no longer has any friends. He stated that he has tried to get a job but cannot tolerate supervision because of the voices that he hears. He is unable to sleep and does not maintain marital relations with his wife because he cannot stand to touch her.

We conclude that the medical evidence and testimony in this case establish that Fulton suffers persistent marked restriction of daily activities, constriction of interests and deterioration in personal habits, and a seriously impaired ability to relate to other people. He therefore meets the requirements in section B. We reject the contrary opinion of Dr. Schneider. He was not provided with the medical testimony of Dr. Armstrong, or that of Fulton and Fulton's father regarding Fulton's daily activities and his impaired ability to relate to other people. As discussed above, reliance

on such a post-hearing report violates Fulton's constitutional rights. Moreover,

"[i]n determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim."

*Broadbent,* 698 F.2d at 412.

In reaching our conclusion, we have also considered the psychiatric evaluation of Dr. Thomas Donica, who examined Fulton in May 1982. Dr. Donica concluded that with proper therapy Fulton would be able to respond appropriately to work pressures, supervision, and co-workers within three months. Dr. Armstrong testified that he did not agree with Dr. Donica's evaluation because he thought Dr. Donica's examination had been inadequate. We also do not find Dr. Donica's opinion persuasive. Fulton had received therapy unsuccessfully from a variety of qualified professionals for over two years before Dr. Donica saw him, thus casting doubt on Dr. Donica's conclusion that therapy would solve Fulton's problems. Furthermore, Dr. Armstrong examined Fulton and found him unable to work more than three months after Dr. Donica made his prediction.

In sum, we hold that Fulton meets the criteria set out in Appendix 1, sec. 12.04, and is therefore disabled. The ALJ's conclusion to the contrary is not supported by substantial evidence. The judgment is reversed and the case is remanded to the Secretary for prompt payment to Fulton of social security disability benefits as of October 25, 1981. We are unable to determine on this record whether Fulton has satisfied the requirements in addition to disability for receiving supplemental security income benefits set out in 42 U.S.C. § 1382 (1982). Accordingly we direct the Secretary to make a prompt determination

tal impairment under new regulations to be promulgated in the immediate future. Given our conclusion that Fulton satisfies the existing

criteria, the motion to remand for this purpose is denied.

of Fulton's eligibility under that statute without delaying payment of Fulton's disability benefits.

Reversed and remanded to the Secretary.