**Alma D. ALFORD, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Defendant.**

**No. 90–1009–C.**

United States District Court,
D. Kansas.

Jan. 9, 1992.

Dennis L. Phelps, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an action to review the final decision of the Secretary of Health and Human Services [42 U.S.C. § 405(g)] denying disability benefits to plaintiff, Alma D. Alford. The case is ripe for decision on the plaintiff's motion for summary judgment and on the Secretary's motion to affirm. Plaintiff has been represented by counsel through most of the proceedings at the administrative level and through all the proceedings at the judicial level.

On March 11, 1988, plaintiff filed her second application for disability benefits under Title II. She alleged that as of January 6, 1987, she suffered from a disabling condition in her feet, back, knees and arm and had low blood pressure. Plaintiff's claim was denied initially and on reconsideration. Following a hearing held on January 18, 1989, the administrative law judge (ALJ) issued his decision finding that the plaintiff was not disabled at any time through February 17, 1989, the date of his decision. On November 8, 1989, the Appeals Council denied the plaintiff's request for review. Consequently, the ALJ's decision stands as the Secretary's final decision.

The court's standard of review is set forth at 42 U.S.C. § 405(g), which reads that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir.1989). The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court is not to reweigh the evidence or substitute its judgment for that of the Secretary. *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir.1987). Nonetheless, the findings of the Secretary will not be mechanically accepted. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985). Nor will the findings be affirmed by isolating facts and labelling them substantial evidence, as the court must scrutinize the entire record in determining whether the Secretary's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). "[T]he 'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.' " *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir.1991) (quoting *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984)).

The Social Security Act provides that an individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A). Claimant has the burden of proving a disability that prevents him from engaging in his prior work for a continuous period of twelve months. The burden then shifts to the Secretary to show that the claimant retains the ability to do other work activity and that jobs the claimant could perform exist in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir.1989). The Secretary satisfies this burden if substantial evidence supports it.

For evaluating a claim of disability, the Secretary has developed a five-step se-

quential process. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2289, 96 L.Ed.2d 119 (1987). Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder next considers whether "the claimant has a medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 141, 107 S.Ct. at 2291. Step three entails determining whether the impairment is equivalent to one of a number of impairments listed in the "Listing of Impairments," 20 C.F.R. Part 404, subpt. p, App. 1 which the Secretary acknowledges are so severe as to preclude substantial gainful activity, 20 C.F.R. § 416.920(d). If no equivalency, the claimant must show that because of the impairment he is unable to perform his past work. 20 C.F.R. § 416.920(e). The final step is to determine whether the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. 20 C.F.R. § 416.920(f). This process comes to an end if at any point the Secretary determines the claimant is disabled or not. *Gossett,* 862 F.2d at 805; 20 C.F.R. § 416.920(a).

In his order of February 17, 1989, the ALJ found:

1. The claimant met the disability insured status requirements of the Act on January 6, 1987, the date the claimant stated she became unable to work, and continues to meet them at least through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since her alleged onset date of disability.

3. The medical evidence establishes that the claimant has mild osteoarthritis of various joints, borderline thyroid functioning, and obesity.

4. The claimant's allegations of "blackouts" are not considered credible. Her other allegations are considered credible to the point that her functioning has been reduced to the sedentary level.

5. The claimant has the residual functional capacity to perform the physical exertion requirements of work except for lifting more than 10 pounds maximum, prolonged standing or walking, repetitive bending or stooping (20 C.F.R. 404.1545).

6. The claimant is unable to perform her past relevant work as plumber's helper, maid, or cook helper.

7. The claimant has the residual functional capacity to perform the full range of sedentary work (20 C.F.R. 404.1567).

8. The claimant is currently 49 years old, which is defined as a younger individual (20 C.F.R. 404.1563).

9. The claimant has a limited education (20 C.F.R. 404.1564).

10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

11. Section 404.1569 of Regulations No. 4 and Rule 201.18, Table No. 1 of Appendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. 404.1520(f)).

The plaintiff attacks the ALJ's findings at paragraphs three, four and seven as not being supported by substantial evidence. Plaintiff also challenges the ALJ's reliance on the grids in paragraph eleven as the plaintiff suffered from disabling pain and other exertional impairments which made the grids inapplicable.

Plaintiff testified to several impairments. Plaintiff described problems with her feet and constant pain in her left foot. Plaintiff said she has a "cracked hip" and a "bad back." Sometimes her right knee will give out while walking. Plaintiff attributed these problems in her legs, back and feet to

arthritis. Dizziness spells have caused her to blackout at times. Plaintiff admits these spells have been helped with medication. When asked if she could lift twenty pounds, plaintiff was doubtful because of tennis elbow problems in her right arm. Plaintiff said it is difficult and painful for her to climb stairs, to walk any distance, and to bend over and pick items off the floor.

She dresses and readies her children for school in the morning and prepares them dinner in the evening. Her other time is spent either resting on the couch, doing small errands, or visiting a friend. She is able to do some of the laundry and ironing for the household. She receives help from her children with mopping and sweeping the floors. She uses a heating pad on her back and hip for thirty minutes each day. She also does prescribed exercises each evening for thirty minutes. Even with the prescribed pain killers, plaintiff says she experiences some degree of pain in her hip and back at all times. She is sometimes forced to rest or sit during activities in order to alleviate the pain.

The medical records indicate that plaintiff began seeing Dr. Stephanie F. Nellis in 1984. In May of 1984, Dr. Nellis saw plaintiff for complaints of pain and swelling in her left ankle. The examination revealed no swelling, warmth or erythema and the ankle was not tender to touch. In January of 1985, plaintiff visited Dr. Nellis with similar complaints. Dr. Nellis again saw no tenderness or swelling but observed that plaintiff complained of discomfort with manipulation. Since the X-rays revealed nothing, Dr. Nellis thought plaintiff "might be developing a little osteoarthritis with the morning stiffness." In June of 1985, plaintiff was referred to Dr. Fearey for her complaints of pain in her left foot. Dr. Fearey observed the ankle was swollen and somewhat tender to palpation. He prescribed Nalfon, an anti-inflammatory, antiarthritic compound. If the ankle did not improve, plaintiff was to return to Dr. Fearey. The medical records do not show that she returned to Dr. Fearey.

In February of 1986, plaintiff visited Dr. Nellis for pain in left ankle. Dr. Nellis observed:

Examination is basically unchanged with a little bit of swelling and alot (sic) of tenderness around the medial malleolus. There was no real decreased range of motion. (sic) or really pain with motion but when having her walk she seems to (sic) protecting it a little bit. I believe she has a recurrent tendinitis.

In August of 1986, Dr. Nellis followed up her treatment of plaintiff's sternal fracture and associated pain in the right chest area, which were injuries caused when plaintiff was involved in a motor vehicle accident several weeks earlier. Although no obvious abnormalities were observed, Dr. Nellis told plaintiff to use heat on her low back to help with the stiffness. In October of 1986, plaintiff told Dr. Nellis that she was still having discomfort in the sternal area but that she was able to go back to work.

In December of 1986, Dr. Nellis saw plaintiff for recurrence of pain in both ankles. The pain had become worse with being on her feet more at work. Observing "considerable pes planus" or flat feet, Dr. Nellis stressed continuous use of the heel wedge and prescribed Clinoril. The next detailed entry from Dr. Nellis is dated August 13, 1987. Dr. Nellis recorded that plaintiff had visited to have a disability form completed and complained of increasing pain in her elbow, feet, ankles, and right hip particularly in the morning and after sitting for an extended period. Dr. Nellis observed:

Examination of the back revealed some discomfort to percussion and she complained of some discomfort with both flexion and extension, but there was no real significant limitation of motion. She also complained of pain with adduction and abduction of the right hip. There are no acute joint swellings or things suggestive of a synovitis. With her history, I do think she has an osteoarthritis. I did not perform any x-rays as the patient does not have insurance and is in rather financial straits at the present.

I am going to treat her symptomatically with Feldene once a day for about two

weeks, and she will call and let me know how she is doing.

The next week, Dr. Nellis gave plaintiff a prescription for Motrin. The medical records do not include a disability form completed by Dr. Nellis.

In December of 1987, plaintiff was referred to Dr. Artz, an orthopedic surgeon, for primarily complaints of pain in her feet but also for complaints of discomfort on the right side and into her right hip. On examination, Dr. Artz saw:

> Examination reveals that she does have bilateral pes planus and she has tenderness along the medial aspect of both ankles, the ankles are otherwise stable with a full range of motion and without any significant synovial thickening or swelling. There is no significant tenderness along the medial longitudinal arch. She does give a history of an old fracture to the right ankle in the past. X-rays of both ankles are within normal limits.
>
> ... The lumbar spine is in good alignment and there is some mild narrowing at the L5–S1 disc space. She does have some decreased space at the sacroiliac joint on the right as compared to the left. Impression is that she has # 1. pes planus with probably secondary stress of the medial collateral ligament of the ankle joint as a result of a tendency for stress secondary to the pes planus of the feet. She also has what appears to be an early arthritic process of the right sacroiliac joint.

Dr. Artz prescribed an arch for her feet and Motrin. A month later, Dr. Artz recorded that Motrin was relieving some of the distress and that she was given an injection over her right sacroiliac joint. A month later, Dr. Artz gave her another injection at plaintiff's request.

Also in January of 1987, plaintiff visited Dr. Pollock, an orthopedic surgeon, for pain in her left foot. Observing very marked pes planus, Dr. Pollock recommended wearing arch supports and exercises.

On January 27, 1988, plaintiff began seeing Dr. James Donnell, a family practice physician. Plaintiff wanted a complete physical as she had experienced recent spells of dizziness and blackouts. Dr. Donnell's examination revealed an enlarged thyroid and slight selling from osteoarthritis. Two weeks later, Dr. Donnell observed that plaintiff's thyroid gland was tender leaving him with the impression that plaintiff probably had Hashimoto's disease which he began treating with medications. Dr. Donnell saw some ankle edema at plaintiff's first visit but saw "[n]o evidence of significant persistent edema." Plaintiff was last seen by Dr. Donnell on March 30, 1988, as she failed to show up for her appointments on April 4, 1988, and May 3, 1988.

At the administrative hearing, Dr. Sifford, an internist serving as medical advisor to the ALJ, testified that plaintiff's symptoms, course of treatment, and response to treatment were not consistent with Hashimoto's disease and showed no continuing condition that would significantly impair the plaintiff's ability to function. When asked whether plaintiff's problems with her feet, knees, hip and back would limit her capacity for light work, Dr. Sifford responded:

> Over and over again the doctors keep stating that they did not notice crepitation, that is, grinding of the joints. Over and over again they state that they did not note swelling. Over and over again they note they did not note limitation of motion. On several instances some tenderness in the left foot was noted, but none of the more recent notations have this and a full range of motion was noted. So, I would see nothing here that would limit this claimant.
>
> It is certainly true that the heavier and more constant the physical activity, people with arthritis have more pain. I would see nothing that would prevent mild work, sedentary work, or moderate work. And in terms of restrictions, I would see no restrictions in terms of damage. Now, if there are certain movements or certain types of activity might increase the pain; for example, she might be able to lift 15 pounds, she'd

have some pain; if she lifted 30 pounds, she'd have a little more, but there is no absolute degree or pounds that one could put on this. Osteoarthritis is extremely common and people with it do experience some pain; most of us over the age of 40 have some.

Dr. Sifford also explained that plaintiff's obesity could be the cause for shortness of breath and also would aggravate her arthritis.

After the hearing, the plaintiff submitted a vocational evaluation report prepared by Jerry Hardin. He concluded that the plaintiff's ability to perform any type of work in the open labor market had been reduced by 100% because of her medically documented exertional impairments. He described those impairments as follows:

> However, presently, the medical records indicate numerous and substantial physical limitations. Dr. Donnell has found she has significant limitation of motion in both knees. Dr. Pollock notes that she is flat footed, and Dr. Nellis has found she has recurrent tendinitis and osteoarthritis. She is also known to have dizzy spells, near black outs, and black outs, and these are documented in her medical records.

Hardin did believe that employment opportunities would exist for plaintiff in the absence of her exertional impairments.

Plaintiff first contends that the ALJ failed to take into account the plaintiff's pes planus, enlarged thyroid, and arthritic pain. The court has perused the ALJ's decision and finds specific mention of each of these conditions. The ALJ properly summarized the medical records as showing that plaintiff had "bilateral pes planus and tenderness along the medial aspect of both ankles" but that the examinations also showed she had a full range of motion and no persistent significant synovial thickening or swelling. This finding is supported by substantial evidence. The ALJ noted that the thyroid enlargement had been treated and there was no evidence suggesting this would continue to present a significant functional impact. This finding is sustained by the medical records and the plain-

tiff's own testimony that her dizziness spells were a problem before she was treated with medications prescribed by the clinic doctors. In fact, plaintiff did not return to Dr. Donnell for further treatment of her thyroid condition.

■ "'[P]ain testimony should be consistent with the degree of pain that could be reasonably expected from a determinable medical abnormality.'" *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1129 (10th Cir.1988); 42 U.S.C. § 423(d)(5)(A) (1988)). If the impairment may be reasonably expected to cause some pain, then allegations of disabling pain are consistent enough to demand consideration of all pertinent evidence. *Hargis*, 945 F.2d at 1489. The credibility of pain testimony is decided upon these factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston*, 838 F.2d at 1132. The ALJ considered some of these factors in his decision. He noted that plaintiff's pain responded to medication and that her daily activities indicated she could sit continuously or for extended periods in the performance of sedentary work. The ALJ also discussed the objective medical evidence which showed no significant limitation of movement. The ALJ believed the restriction to sedentary work would reduce the prospect of pain. None of the treating physicians said the plaintiff had disabling pain as a result of one or all of the plaintiff's impairments. Having considered the factors critical to the credibility determination, the ALJ is entitled to the deference accorded a trier of fact on witness credibility issues. This court finds no error in the ALJ's finding that plaintiff's pain testimo-

ny was credible only to the extent that she was limited to sedentary work.

Plaintiff next challenges the ALJ's finding that plaintiff's testimony as to her blackouts was not credible. Since the medical records showed treatment for the blackouts, the medical evidence, in plaintiff's opinion, corroborates that she suffered from these blackouts. The plaintiff also contends the ALJ failed to give specific reasons for disbelieving her testimony. The ALJ did give a specific reason for disbelieving the plaintiff's testimony on her blackouts: "The undersigned found that the claimant was taken to exaggerate or dramatize her statement about 'blackouts', as she could describe no specific instance of the same." The ALJ also said that no physician had opined that the blackouts had occurred. Indeed, none of the medical records cited by the plaintiff include such an opinion or an opinion that the blackouts were consistent with plaintiff's other symptoms. More importantly, the record does not support plaintiff's argument that she is disabled because of dizziness or blackouts, as she testified these were problems only before her medical treatments.

Plaintiff next takes issue with the ALJ's finding that plaintiff could perform the full range of sedentary activities. By regulation, sedentary work is defined to include:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. Plaintiff's testimony on her inability to lift twenty pounds with her right arm and on her need to use a heating pad once a day for thirty minutes does not establish that plaintiff is unable to perform the full range of sedentary work. The record contains no work restrictions imposed by a treating physician that would preclude plaintiff from doing sedentary

work. The ALJ also did not err in rejecting the testimony of plaintiff's vocational expert for the reason that the expert assumed plaintiff was continuously suffering from blackouts. The reliability of the vocational expert was questionable for yet another reason. The expert said that: "Dr. Donnell has found she has significant limitation of motion in both knees," when, in fact, Dr. Donnell said: "She has some mild limitation of motion, with her knees." Simply said, the ALJ properly rejected the expert's opinion as based on erroneous factual assumptions.

Plaintiff finally argues that the ALJ erred in mechanically applying the grids despite clear evidence she could not perform the full range of sedentary work. To meet his burden in step five, the Secretary in appropriate circumstances may rely on the Medical–Vocational Guidelines (grids), 20 C.F.R., Pt. 404, Subpt. P, App. 2. *Heckler v. Campbell,* 461 U.S. 458, 467–69, 103 S.Ct. 1952, 1957–59, 76 L.Ed.2d 66 (1983). When the claimant's RFC and other relevant characteristics (age, education, work experience) "exactly fit one of the 'grids' in the Secretary's medical-vocational guidelines then the guidelines may be used to meet that burden of proof." *Gatson v. Bowen,* 838 F.2d 442, 446 (10th Cir.1988) (citations omitted). A claimant is placed in one of five RFC categories depending on his "capacity for work activity on a regular and continuing basis." *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir.1984) [quoting App. 2, § 404.1545(b); App. 2 § 200.-00(c)]. Most importantly, "a claimant must be able to perform the *full range* of such work on a daily basis in order to be placed in a particular RFC category." *Channel,* 747 F.2d at 579–80) (emphasis in original).

Nonexertional limitations may also restrict the claimant's capacity to perform the full range of work demanded from a particular RFC category. *Sorenson,* 888 F.2d at 712. Pain is nonexertional in nature if "it is present whether or not the claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges...." *Huston v. Bowen,* 838 F.2d at 1131. When nonexertional limitations are present, the

grids cannot be conclusively applied unless the ALJ finds upon substantial evidence that despite the nonexertional impairment the claimant is able to perform on a daily basis the full range of work within the particular RFC category. *Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir.1985). Stated another way, when nonexertional conditions affect the range of activities, the grids can only serve as a framework to aid the determination of whether sufficient jobs exist for the claimant given his particular circumstances. *Gossett*, 862 F.2d at 806.

The ALJ did not run afoul of any of these rules. He found that plaintiff's complaints of pain were credible only to the extent that she was limited to sedentary work. He found that her blackouts were not credible and did not pose a significant functional limitation. Most importantly, the ALJ found that plaintiff's complaints of pain did not prevent her from performing the full range of sedentary work. Each of these findings is supported by substantial evidence.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (Dk. 7) is denied, and the Secretary's motion to affirm (Dk. 10) is granted.