Daniel MILLER, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 02–4154–SAC.

United States District Court, D. Kansas.

Dec. 18, 2003.

Robert A. Grosser, Reynolds & Gold, P.C., Springfield, MO, for Plaintiff.

David D. Plinsky, Office of United States Attorney—Topeka, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action to review the final decision of the defendant Commissioner of Social Security ("Commissioner") denying the claimant Daniel Miller's application for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act ("Act"). Both parties have timely filed their respective briefs pursuant to D.Kan. Rule 83.7(d). The case is ripe for decision.

## PROCEDURAL HISTORY

Claimant applied for SSI on August 2, 1999, asserting he had been disabled as of July 29, 1996. His claims were denied initially and on reconsideration. At the claimant's request, an evidentiary hearing before an administrative law judge

("ALJ") was held on September 1, 2000, and he appeared in person and with counsel. (Tr. 31–80). Witnesses at the hearing were the claimant and a vocational expert. The ALJ subsequently issued his decision on February 21, 2001, finding that the claimant was not disabled as defined under the Act. The Appeals Council denied the claimant's request for review. Thus, the ALJ's decision stands as the commissioner's final decision and judgment. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994).

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "more than a mere scintilla" and is that evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation and citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d at 858 (citation omitted).

■■■ The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'"

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court "must examine the record closely to determine whether substantial evidence supports" the commissioner's determination. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996). The court is not to reweigh the evidence or substitute its judgment for the commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). Nonetheless, "'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence ....'" *Winfrey*, 92 F.3d at 1020 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988)). The courts do not mechanically accept the commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507, 1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services*, 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the" commissioner. (citation omitted)). Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the commissioner's conclusions are rational. *Holloway v. Heckler*, 607 F.Supp. 71, 72 (D.Kan.1985). "'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the ... [commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.'" *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (quoting *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The record must "demonstrate that the ALJ considered all of the evidence," through "discussing the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon,

[and] significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir.1996).

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than 65 years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant bears his burden of proof on the first four steps, he establishes a prima facie case of disability. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). The burden of proof then shifts to the commissioner at step five to show that the claimant retains the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989). The commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993). A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypothetical questions posed to the expert. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991).

## ALJ'S FINDINGS

In his order of February 21, 2001, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since July 14, 1999.

2. The medical evidence establishes that the claimant has the following severe impairments: degenerative disc disease of the lumbar spine, ischemic heart disease, coronary artery disease, osteoarthritic changes in the T1–2 and T9–10, slight scoliosis, myofascitis of the thoracic spine and situational depression. Nevertheless, he does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. part 404, Appendix 1, Subpart P.

3. The claimant's testimony is not found credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in the claimant's testimony, all of which is discussed more fully in the Rationale section of this decision.

4. From the protective filing date the claimant's medically determinable impairments were of such severity to prevent him from lifting more than 20 pounds occasionally and 10 pounds maximum frequently; standing or walking more than four hours in eight; sitting more than six hours in eight; climbing ropes, ladders or scaffolds; he requires a sit/stand option; should avoid stooping, twisting, squatting, kneeling or crawling, and should no more than occasionally climb ramps or stairs; he should not work with the right upper extremity above shoulder level; he should avoid concentrated heat, humidity and cold, unprotected heights, hazardous moving machinery and vibration; and, he is able

to perform only simple, routine, repetitive tasks. (20 C.F.R. § 416.945).

5. The claimant is unable to perform his past relevant work.

6. The claimant is a younger individual (20 C.F.R. § 416.963), and has the equivalent of a high school education (20 C.F.R. § 416.964).

7. The claimant has no acquired work skills that are transferable to semi-skilled or skilled work functions of other work within his residual functional capacity (20 C.F.R. § 416.968).

8. After considering the claimant's above described residual functional capacity for a range of work and age, education and past relevant work, the undersigned Administrative Law Judge is persuaded that the claimant would be able to make a vocational adjustment to work which exists in significant numbers in the local and national economies.

9. The claimant has not been under a "disability," as defined in the Social Security Act, as amended, since July 29, 1996 and through the date of this decision (20 C.F.R. § 416.920(f)).

(Tr. 20–21).

## SUMMARY OF ARGUMENTS

The plaintiff argues that the ALJ's assessment of the plaintiff's mental limitation is not supported by medical evidence. The ALJ determined that the plaintiff's RFC was limited to "simple, routine, repetitive tasks" when the only medical evidence on this issue was a consultative examination showing the plaintiff would have limitations in performing activities within a schedule and at a consistent pace and in completing a regular workday and workweek. The plaintiff further contends the ALJ erroneously based the plaintiff's RFC on the opinions of consulting physicians and not treating physicians. The court will address first this latter contention.

## OPINION OF DR. STANLEY HORNBAKER

 Stanley Hornbaker, M.D., the plaintiff's treating physician, twice completed medical statements at the request of the SRS. In a statement dated January 18, 1999, Dr. Hornbaker wrote that the plaintiff's diagnosis was "1) degenerative arthritis of lumbar spine with degenerative disc disease, 2) DA ("degenerative arthritis") of thoracic spine with chronic paraspinous myofascitis." (Tr. 470). Dr. Hornbaker also represented that the plaintiff had "marked difficulty standing or walking which is expected to persist for at least 12 months and results in severe functional limitation," and opined that this condition prevented the plaintiff's performance of gainful employment. (Tr. 467, 470). Dr. Hornbaker completed a similar form on June 6, 2000, therein stating essentially the same impairment and inability to perform gainful employment. (Tr. 473, 476).

At the request of the plaintiff, Dr. Hornbaker also completed on September 7, 2000, a medical source statement which had the stated purpose of describing the plaintiff's strength factors despite physical impairments on a regular and continuing basis, the postural and manipulative factors, environmental factors and pain factors. (Tr. 513–14). Dr. Hornbaker indicated that the plaintiff could lift or carry frequently less than five pounds, stand or walk continuously for thirty minutes for a total of two hours during an eight-hour day, and sit continuously for one hour for a total of three hours during a work day, and that the plaintiff's ability to push and pull was limited by increasing pain. Dr. Hornbaker also opined that the plaintiff could never climb, stoop, kneel, crouch or crawl and only occasionally could balance and that the plaintiff should avoid any exposure to heights and moderate exposure to extreme cold and extreme heat. As for

pain factors, Dr. Hornbaker recorded that the plaintiff suffered such pain that would require lying down every two to three hours for fifteen to thirty minutes. Dr. Hornbaker also noted that the plaintiff's pain medication would limit driving and operating heavy equipment and would affect his coordination.

With regard to Dr. Hornbaker's opinion, the ALJ devoted only part of a single paragraph to analyzing it. The ALJ limited his summary of Dr. Hornbaker's treatment and opinions regarding the plaintiff to those recorded on the formatted medical statements dated June 6, 2000, and September 7, 2000. The ALJ rejected those opinions offering only this analysis: "The undersigned finds that this opinion is inconsistent with the claimant's activities of daily living, admitted abilities and the residual functional capacity of Dr. Magnotta on October 2, 2000." (Tr. 19). In that same paragraph, the ALJ also summarized the opinion of Robert W. Barnett, Ph.D. and rejected it. The ALJ ended that paragraph of his decision with this brief and undeveloped conclusion: "The undersigned gives little weight to these opinions because they are inconsistent with the diagnostic tests and clinical findings of record, conclusory and do not cite any specific medical evidence that would support their conclusions." (Tr. 19).

"In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir.2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§ ] 404.1527 and 416.927." *Id.* at 1300 (quotation omitted). The Tenth Circuit identified those factors as including:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) (quotation omitted). And, "[a]fter considering the pertinent factors, the ALJ must give good reasons in [the] ... decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation omitted). Further, "if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (quotation omitted); *see also Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir.1994). The ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted) (emphasis in original).

The rationale behind these rules governing treating physician opinions is sound. "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir.2003) (quoting 20 C.F.R. § 416.927(d)(2)). Indeed, this evidentiary doctrine is grounded "on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Id.* (quotation omitted) (emphasis in original).

"In all cases, the regulations require that the ALJ give good reasons in the notice of determination or opinion for the weight that is given the physician's opinion." *Doyal v. Barnhart*, 331 F.3d at 762 (quotation and citations omitted). The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quotation and citation omitted).

The ALJ's decision offers no substantial explanation or sufficiently specific reasons for the "little weight," if any, given the opinion of Dr. Stanley Hornbaker. The ALJ's decision suggests little more than boilerplate rejection of Dr. Hornbaker's opinion based largely on the ALJ's own credibility call. *See Daley v. Barnhart*, 2003 WL 22327186, at *9 (D.Kan. Oct.9, 2003). The ALJ simply listed three inconsistencies, two of which are not sustained by substantial evidence. The court is unable to find any significant or meaningful

inconsistencies between the plaintiff's admitted abilities, as well as his described daily activities and those limitations listed in Dr. Hornbaker's medical statement. As far as inconsistencies with Dr. Magnotta's opinion, the ALJ wrote nothing other than that they existed. Without knowing the specific inconsistencies found significant by the ALJ, the court is unable to review and determine whether the ALJ has any good reason for essentially dismissing Dr. Hornbaker's opinion and whether the ALJ's decision correctly applies the treating physician doctrine. *See Reid v. Chater*, 71 F.3d 372, 374 (10th Cir.1995) (The treating physician's opinion should generally be weighted more heavily than the opinions of consulting physicians). The ALJ's decision does not reflect that he evaluated Dr. Hornbaker's opinion considering the treatment relationship, the nature and extent of treatment provided, the frequency and kind of examinations performed, and the degree to which the physician's opinion is supported by treatment records and other relevant evidence. For all these reasons, the court must remand the decision, because it cannot properly review the ALJ's decision without these necessary findings.

## EVIDENCE OF MENTAL LIMITATION

At the evidentiary hearing on September 1, 2000, in which the vocational expert testified, the ALJ in his hypothetical question accounted for the situational depression by limiting the plaintiff's capacity to "simple, routine, repetitive work." (Tr. 77). In doing so, the ALJ explained, "I'm going to refer to the situational depression, just because I don't have anything right now on that, but we'll-we might do some further testing and come up with a diagnosis." (Tr. 77). Robert Barnett, Ph. D., subsequently conducted a mental status examination of the plaintiff on October 16, 2000, along with a Beck Depression Inventory, and a MMPI–II, and submitted

his report to the ALJ in November of 2000. (Tr. 528–534). Besides his written report, Barnett also completed a "Medical Source Statement of Ability to Do Work–Related Activities (Mental)" which asked questions about the plaintiff's "ability to perform ... work-related mental activities." (Tr. 531–32). Barnett assessed the plaintiff's ability as only "fair," that is, able to "perform the activity satisfactorily some of the time," on the following activities: "Perform activities within a schedule, maintain regular attendance, and be punctual," "Complete a normal workday or workweek," and "Perform at a consistent pace." By each of these ratings, there is a handwritten asterisk, and at the bottom of the page appears "Hx of Back problems." (Tr. 531). The ALJ wholly rejected Barnett's ratings as to the "fair" categories on the weight of this statement, "The undersigned notes that this opinion was based on the claimant's subjective physical complaints and they are outside the expertise of the examining psychologist." (Tr. 19). In short, the ALJ minimized the significance of Barnett's mental evaluation of the plaintiff by interpreting it as Barnett's attempt to assess the plaintiff's physical capacity from the plaintiff's complaints alone.

The court is bothered with ALJ's cursory interpretation and application of Barnett's evaluation and assessment. Rather than believing that a trained physician would understand and follow the directions appearing on the form and would evaluate the plaintiff consistent with the physician's training and expertise, the ALJ assumed the physician ignored the directions and then evaluated the plaintiff's capacity for work on factors for which the physician is plainly not qualified to render an opinion. The court certainly agrees that the ALJ's reading of Barnett's report and medical source statement is possible and maybe even plausible. The court, however, believes that considering the potential significance of this evidence the ALJ on remand should seek clarification from Barnett regarding the factual and medical basis for his "fair" ratings.

IT IS THEREFORE ORDERED that the judgment of the commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings not inconsistent with this memorandum and order.