**Walter E. DEGAN, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 01–4046–SAC.

United States District Court, D. Kansas.

March 2, 2004.

Steven M. Tilton, Tilton & Tilton LLP, Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This is an action to review the final decision of the defendant Commissioner of

Social Security ("Commissioner") denying the claimant Walter Degan's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"). The record from the proceedings below has been filed, and both parties have timely filed their respective briefs pursuant to D.Kan. Rule 83.7(d). The case is ripe for decision.

**PROCEDURAL HISTORY**

Claimant made an earlier application for SSI benefits in June of 1994 alleging a disability beginning in March of 1994. This application was denied initially and on reconsideration, and after conducting an evidentiary hearing the Administrative Law Judge ("ALJ") denied benefits on this application in a decision dated March 10, 1999. The Appeals Council denied the plaintiff's request for review, and the plaintiff did not appeal the denial of benefits on this application.

The claimant instead filed a new application for SSI on April 30, 1998, alleging a disability beginning April 9, 1998. His application was denied initially and on reconsideration. At the claimant's request, a hearing before an ALJ was held on February 25, 1999, and he appeared in person and with counsel. (Tr. 29–90). Witnesses at the hearing were the claimant and a vocational expert. The ALJ subsequently issued his decision on March 10, 1999, finding that the claimant was not disabled as defined under the Social Security Act. The Appeals Council denied the claimant's request for review. Thus, the ALJ's decision stands as the commissioner's final decision. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir.1994).

**STANDARD OF REVIEW**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "more than a mere scintilla" and is that evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quotation and citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1328 (10th Cir.1992) (quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d at 858 (citation omitted).

The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir.1985)). The court "must examine the record closely to determine whether substantial evidence supports" the commissioner's determination. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir.1996). The court is not to reweigh the evidence or substitute its judgment for the commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir.1992). Nonetheless, " '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence ....' " *Winfrey*, 92 F.3d at 1020 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)). The courts do not mechanically accept the commissioner's findings. *Claassen v. Heckler*, 600 F.Supp. 1507,

1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services,* 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the" commissioner. (citation omitted)).

Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the commissioner's conclusions are rational. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985). " 'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the ... [commissioner's] decision and, on that basis determine if the substantiality of the evidence test has been met.' " *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994) (quoting *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The record must "demonstrate that the ALJ considered all of the evidence," through "discussing the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects." *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir.1996).

To be eligible for SSI, the claimant here must be disabled. An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B). A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If the claimant bears his burden of proof on the first four steps, he establishes a prima facie case of disability. *Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988). The burden of proof then shifts to the commissioner at step five to show that the claimant retains the residual functional capacity ("RFC") to perform other work available in the national economy, considering such additional factors as age, education, and past work experience. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989). The commissioner satisfies this burden if substantial evidence supports it. *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993). A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypothetical questions posed to the expert. *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir.1991).

## ALJ'S FINDINGS

In his order of March 10, 1999, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since August 27, 1996.

2. The medical evidence establishes that the claimant has degenerative joint disease of the cervical spine and arthritis of the upper extremities, depression and emotional impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's statements concerning his impairments and their impact on his ability to work are only credible to the extent that they impose the limitations in the statement of residual functional capacity.

4. The claimant has the residual functional capacity for a range of light work

with a marked limitation in the ability to maintain attention and concentration for extended periods and a moderate limitation in social interact and adaptation as noted above.

5. The claimant is unable to perform his past relevant work as a laborer.

6. The claimant's capacity for the full range of light work is diminished as noted above.

7. The claimant is 36 years old, a "younger individual."

8. The claimant has a limited education.

9. The claimant has unskilled work experience.

10. Based on an exertional capacity for light work, and the claimant's age, educational background, and work experience, Section 416.969 and Rule 202.16, Table 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

11. Although the claimant is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in a significant numbers in the national economy. Such work includes employment as a copy machine operator, attendant/ticket seller and a small parts assembler. A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

12. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision.

(Tr. 19–21).

## SUMMARY OF ARGUMENTS

The plaintiff argues that he is entitled to a finding of disabled per se based on the opinion of Dr. Fantz that the plaintiff's "complaints of physical pain, his depression, slowness and difficulties with sustained concentration make it very unlikely he could manage the performance demands of an eight-hour day." (Tr. 222). Next, the plaintiff asserts substantial evidence does not sustain the ALJ's credibility determination concerning the plaintiff's disabling pain and the severity of his impairments. The plaintiff also contends the ALJ erred at step two in not recognizing as severe the plaintiff's impairments of degenerative joint disease of the lower extremities, his learning disorder and vision disturbance. Finally, the plaintiff argues the vocational expert's testimony is not substantial evidence, because the ALJ committed the previous errors in evaluating the evidence and because inadequate consideration was given to the plaintiff's frequent deficiencies in concentration, persistence, or pace. The plaintiff asks the court to reverse for an immediate award of benefits or remand for the ALJ to make a proper consideration of the evidence.

## DISCUSSION AND ANALYSIS

### Evaluation of Charles Fantz's Opinion

In early June of 1998, Charles Fantz, Ph. D. performed a consultative psychological assessment of Mr. Degan utilizing a Wechsler Adult Intelligence Scale–III, Wechsler Memory Scale–III, and a clinical diagnostic interview with mental status examination. Based on these test results, Fantz drew several conclusions:

> He does well on just attention span but when he has to sustain his attention and concentrate on more complex material, his performance goes way down. It also shows that his processing speed is quite low, in the Borderline Range just above expectations for the mentally retarded. This has implications for his performance on jobs. It is likely that in most jobs where time is a factor he will perform much more slowly and not be competitive with other workers.

. . . .

When the auditory and visual scores are averaged together to get an overall immediate memory score, he falls in the Low Average Range. However, this is misleading because of the marked difference between auditory and visual immediate memory. He has much more difficulty with visually presented material with his score falling in the Mental Retardation Range.

. . . .

I believe his performance on these tests is an accurate reflection of his general functioning. He appeared to try and do his best.

**SUMMARY STATEMENT**

Mr. Degan has symptoms of a Major Depression with depressed mood, diminished interest in formerly pleasurable activities, insomnia, loss of energy, feelings of worthlessness and difficulties with sustained concentration. He would be a good candidate for a psychiatric evaluation regarding the efficacy of antidepressant medication.

He also shows evidence of an Amnestic Disorder NOS, particularly for visual material. This testing is insufficient to confirm a learning disability. . . . .

> Though he appears to be uncomfortable around strangers, his comments suggest he forms friendships when he works and is able to get along with co-workers and supervisors. He is able to understand simple tasks but is quite slow in executing them. His processing speed index on the WAIS–III was in the Borderline Range of functioning, falling at the 5th percentile. He also has trouble with sustained concentration. His complaints of physical pain, his depression, slowness and difficulties with sustained concentration make it very unlikely he could manage the performance demands of an eight-hour day job.

(Tr. 220–222). The plaintiff argues that Fantz's opinion is sufficient evidence for finding that the plaintiff is unable to work on a regular and continuing basis which means eight hours a day for five days a week.

In considering Fantz's analysis and conclusion, the ALJ construed the report so as to diminish its significance: "The examiner [Fantz] noted that the claimant reported physical pain, depression, slowness and difficulties with sustained concentration which could impact the performance demands of an eight-hour day job." (Tr. 15). By putting this spin on Fantz's conclusion, the ALJ improperly substituted his opinion for what Fantz actually wrote. The ALJ chose to read Fantz as simply relying on what Mr. Degan was reporting and as only intending to talk about a mere possibility ["could"] of impacting performance of an eight-hour work day rather than the probability ["make it very unlikely"] of having this impact.

Later in the ALJ's decision, the following appears:

> The examiner questioned the claimant's ability to perform the demands of an eight-hour day job, but this was based on the claimant's subjective reports and not on objective evidence. The testing noted borderline intelligence with no evidence of a learning disability. The claimant was noted to have some depressive symptoms and would be a good candidate for antidepressant medication. However, the claimant has chosen not to take medication. Overall, the evidence does not establish an inability to perform light, unskilled activities.

(Tr. 17). There is no substantial evidence of record to support the first two sentences in this finding. First, Fantz not only "questioned" Degan's ability but said it was "very unlikely" that Degan could perform an eight-hour day. Second, Fantz's conclusion is not based on what

Degan reported to him. While referring to Degan's "complaints of physical pain," Fantz also based his conclusion on what he learned from the objective testing and examination of Degan which showed "depression, slowness and difficulties with sustained concentration." (Tr. 222). Another consulting psychologist giving advice to the ALJ also read Fantz's report contrary to the ALJ's interpretation:

Dr. Fantz, an examining source, does not believe the clt [claimant] can perform full-time competitive work, due to depression, slowness and reduce sustained concentration. The record does support the allegations that the clt is slow in rate of performance and poor in visual memory. It is unclear if this is due to the effects of depression or some organic factor. If depression, it is treatable and based on evidence in file has not met duration. If organic, likely a permanent condition.

■ (Tr. 238). In short, the ALJ's approach placed him in the position of judging a medical professional on the proper assessment of medical data that includes a patient's complaints. An ALJ may not substitute his lay opinion for a medical opinion. *See Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 744 (10th Cir.1993). Finally, the ALJ's statement that there is "no evidence of a learning disability" cannot be found in Fantz's report or in any another examiner's report. The ALJ's attempts to discredit Fantz's report and opinion are neither sound nor supported by substantial evidence.

In the two months following the ALJ's decision, Mr. Degan underwent a psychological evaluation over six different sessions and involving six different assessment procedures and a clinical interview. Mr. Degan's score placed him in the borderline range of intellectual functioning with "demonstrated weaknesses in per-formance tasks measuring his fluid reasoning, working memory, and visual-motor recognition." (Tr. 264). His scores on working and immediate memory "were the most impaired," and both "are the core components required when an individual is learning new information." (Tr. 265). The evaluator also observed: "Mr. Degan's scores on the Stroop Color and Word Test were all in the impaired range of functioning, with a low interference score. This, combined with Mr. Degan's impaired memory and intellectual functioning, may be indicative of diffuse brain dysfunction, and should be further assessed by a neurologist." (Tr. 265). The evaluator noted that Mr. Degan's test scores had declined from his 1998 performance, that the current test scores were believed valid, but that the evaluator did not know the reasons for the decline. The evaluator included the following in her summary:

For the purposes of determining SSI eligibility, Mr. Degan presented as impaired in several areas. His daily activities functioning is in the marked impairment range, based on his Vineland Daily Live Skills Score (73). Extreme limitations were found in his social functioning, evidence on his Vineland Socialization score of 48. Communication skills were also assessed using the Vineland, and Mr. Degan had an extreme impairment with a score of 31. Mr. Degan also evidence marked impairments on both his immediate memory and working memory functioning on the WMS–III. His cognitive functioning, based on his FSIQ of 73, was in the Borderline range, which is moderately impaired. His emotional and cognitive functioning appear to be deteriorating, based on test results and clinical interview.

(Tr. 267). In short, this subsequent psychological evaluation not only reached conclusions similar to those in Fantz's report but assessed other areas of the claimant's

functioning and found additional marked impairments, including evidence of impairments consistent with a learning disability.

In his analysis, the ALJ also excerpted another sentence from Fantz's report and construed it so as to serve as a basis for denying benefits: "The claimant was noted to have some depressive symptoms and would be a good candidate for antidepressant mediation. However, the claimant has chosen not to take medication." (Tr. 17). In contrast, Fantz wrote that Mr. Degan "would be a good candidate for a psychiatric evaluation regarding the efficacy of antidepressant medication." (Tr. 222). The court finds nothing in Fantz's report to support the ALJ's conclusion that Mr. Degan's depression would improve with medication, that Mr. Degan had been prescribed any antidepressant medication, and that Mr. Degan had chosen not to take this medication. A claimant's perceived lack of motivation to receive treatment is relevant if he unjustifiably refuses treatment that would enable him to work. *See Thompson v. Sullivan,* 987 F.2d 1482, 1489–90 (10th Cir.1993). The record is devoid of substantial evidence to sustain the application of this rule.

Though Fantz may not have been a treating physician, the ALJ was still required to evaluate Fantz's opinion and to provide specific, legitimate reasons for rejecting it. *Doyal v. Barnhart,* 331 F.3d 758, 764 (10th Cir.2003). The ALJ has not provided specific reasons that are legitimately supported by the record for the minimal weight assigned Fantz's opinion. Rather, the ALJ through his interpretation of Fantz's report has substituted his own opinion for that actually expressed by Fantz. In short, the ALJ's decision suggests little more than a selective reading of Fantz's report using only those parts and those interpretations most favorable to a finding of nondisability. This approach is improper. *See Switzer v. Heckler,* 742

F.2d 382, 385–86 (7th Cir.1984); *Valdez v. Barnhart,* 62 Fed.Appx. 838, *843 (2003).

### Credibility Determinations

 Because "[c]redibility determinations are peculiarly the province of the finder of fact," a reviewing court will not upset them "when supported supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995). Credibility determinations, however, cannot be based on intangible or intuitive reasons, but "must be grounded in the evidence and articulated in the determination or decision." Soc. Sec. Rul. 96–7p, 1996 WL 374186, at *4. Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler,* 68 F.3d at 391. The ALJ's credibility findings concerning the plaintiff's testimony and complaints are not supported by substantial evidence and are contrary to the law in several regards.

The ALJ found that Mr. Degan's "statements concerning his impairments and their impact on the ability to work are credible only to the extent they indicate an inability to engage in activity exceeding the residual functional capacity set forth below." (Tr. 17). The ALJ's stated reasons for this determination are that the claimant "treats his pain with nothing stronger than over-the-counter Tylenol," claimant "worked part time at a vegetable market until approximately June 1998," claimant "stated that he would lift up to 20 pounds, walk 4 hours, stand 3 hours, and sit 4 hours" (exhibit B7F/61), and the "consultative examination noted no atrophy, preserved dexterity, minimal loss of spinal motion, absence of paraspinal spasm, normal motor function and reflexes, and stable gait. (exhibit B5F)." (Tr. 17).

The evidence of record shows the plaintiff did not rely exclusively on Tylenol for relief from the arthralgia in his back and

neck. In December of 1997, Dr. Murphy prescribed Daypro. When Daypro failed to offer much relief, Dr. Murphy recorded that the plaintiff continues to have "chronic daily pain" and assessed the plaintiff as suffering from "Chronic musculoskeletal-type neck and upper back pain, previously completely unresponsive to fairly aggressive therapeutic measures." (Tr. 215). As of the hearing, the plaintiff was taking Arthrotec but was experiencing the side effects of stomach irritation and drowsiness. Because the ALJ ignored these prescriptive medications and the related evidence regarding dosage, effectiveness and side effects, the credibility inference to be drawn from any inconsistency between the plaintiff's ongoing use of Tylenol and the plaintiff's complaints of pain is questionable at best.

The plaintiff testified that his part-time work for his former employer entailed "little odd jobs" which he was permitted to do at his own pace. The employer did not push him and paid him only the minimum wage. The plaintiff said he worked no more than five or six hours in a day and quit in June of 1998 because this occasional light work was aggravating his pain. On his disability report prepared in April of 1998, the plaintiff described this employment in these terms:

> I currently am working at a veggie market for financial reasons-my boss let's me work at my own pace, when I can-George Meier feels that I am cheating the company because I can't do as much as the other employees do. Tom Meier is letting me work-just as a favor-to help me out so I can pay my rent.
>
> I do not lift or carry anything-I repair equipment i.e. carts-never do any clean up work-I use a hammer, screwdriver, saws. I do this only when the pain isn't bad.

(Tr. 151). The performance of part-time work under these circumstances is hardly inconsistent with the plaintiff's testimony about his pain and its impact on his ability to work full-time. A claimant "need not prove that her pain precludes all productive activity and confines her to life in front of the television." *Baumgarten v. Chater,* 75 F.3d 366, 369 (8th Cir.1996) (citation omitted). Evidence that a claimant engages in limited activities may be considered, along with other relevant evidence, in considering entitlement to benefits. *Gay v. Sullivan,* 986 F.2d 1336, 1339 (10th Cir.1993). Trying to stay active through limited activities on those days when the pain is not as great is not substantial evidence of a daily activity level consistent with the ALJ's RFC finding. "'Occasional symptom-free periods—and even the sporadic ability to work are not inconsistent with disability.'" *Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir.1998) (quoting *Lester v. Chater,* 81 F.3d 821, 833 (9th Cir.1995)). Finally, the ALJ noticeably attaches no import to the claimant's decision to stop working part-time because of pain, even though his financial need for working apparently did not change. The ALJ's undeveloped reference to this part-time work as a reason for questioning the plaintiff's credibility is little more than a conclusion in the guise of a finding.

Other than medical evidence, the only other credibility factor discussed by the ALJ relevant to the plaintiff's physical RFC was a cited statement attributed to the plaintiff about his part-time work that appears on a RFC assessment form completed by a consultant. (Tr. 250, Ex. B7F/61). As it appears on the form, the statement reads:

> Claimant reports that he has part-time work (not SGA) in a vegetable market. Reports he lifts up to 20 pounds. Also reports that he walks about 4 hours, sits for about 4 hours and stands for about 3 hours.

(Tr. 250). As this consultant did not examine the plaintiff, this statement attributed to the plaintiff must have been taken from his disability report prepared in April of 1998, in which he attempted to describe the level of physical activity involved in a typical day at his part-time work by answering questions that asked him to quantify such activity. (Tr. 152). The plaintiff's answers to these questions reveal some confusion over what he was being asked to describe. For example, the plaintiff answered there was no lifting or carrying involved in a typical day on the job but then answered that the heaviest weight lifted on the job was "maybe" twenty pounds. The other problem with the ALJ isolating and relying on the plaintiff's numerical assessments about a typical day is that it ignores the plaintiff's fuller description of his basic duties that preceded this assessment. In that description, the plaintiff emphasized that he worked at his "own pace," that he worked only when his pain was not "bad," that he did not lift or carry anything other than tools, that the job was only a favor by one of the owners/employers to help the plaintiff make enough money to pay his rent, and that one of the other owners/employers considered the plaintiff's employment to be unfair. (Tr. 151). Rather than placing these numerical assessments within the full context of the plaintiff's description of the job or questioning the plaintiff at the hearing about these assessment answers, the ALJ simply isolated the numerical assessments and summarily attached value to them in discrediting the plaintiff's pain testimony.

■ As for the plaintiff's testimony about his depression, the ALJ did not discuss Fantz's opinion that the plaintiff displayed symptoms of "a Major Depression with depressed mood, diminished interest in formerly pleasurable activities, insomnia, loss of energy, feelings of worthlessness and difficulties with sustained concentration." (Tr. 222). Instead, as noted above, the ALJ chose to read Fantz's report as saying that the plaintiff was a good candidate for antidepressant medications and that the plaintiff had "chosen not to taken medication." (Tr. 17). The court will simply refer back to its earlier discussion of this reading as unsupported by Fantz's actual written report. The court also finds that the ALJ's analysis of this medical treatment factor is inconsistent with Tenth Circuit case law:

> In addition, the reasons the ALJ gave for his adverse credibility determination are not supported by the record. The ALJ believed that plaintiff did not receive enough medical treatment and his motivation for seeking treatment was only to support his claim for benefits.... A claimant's perceived lack of motivation to receive treatment is relevant if he unjustifiably refuses treatment that would enable him to work. *See Thompson v. Sullivan,* 987 F.2d 1482, 1489–90 (10th Cir.1993). Even then, however, the ALJ must determine that such treatment was prescribed for the claimant and find out why the claimant refused it. *See id.* The ALJ made no such determination or inquiry in this case.

*Valdez v. Barnhart,* 62 Fed. Appx. 838, *842 (10th Cir.2003). The ALJ did not make a meaningful inquiry into this issue that would comply with Tenth Circuit case law, and the record is also devoid of substantial evidence to support the ALJ's conclusion on this credibility factor.

## CONCLUSION

Having found that the ALJ failed to follow correct legal standards, misconstrued evidence of record and made findings that are not supported by substantial evidence, the court concludes that the errors may have necessarily impacted the ALJ's assessment of physical and mental RFC and the vocational expert's testimony

based upon the same. Consequently, the case must be remanded for further proceedings. On remand, the ALJ also shall consider the additional evidence that the plaintiff submitted to the Appeals Council. (Tr. 260–268).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings not inconsistent with this memorandum and order.