Barbara DAVIS, Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 84–2367
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1984.

---

Steven E. Hollimon, Beaumont, Tex., for plaintiff-appellant.

Robert Wortham, U.S. Atty., William J. Cornelius, Jr., Asst. U.S. Atty., Tyler, Tex., Yolanda Melendez Joosten, Dallas, Tex., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

## PER CURIAM:

This action was brought under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Secretary of Health and Human Services, denying an application for a period of disability, disability insurance benefits, and supplemental security income. Because we question whether the Secretary's decision was informed by the proper legal standard, we vacate the order of the district court and remand the case for further proceedings in accordance with the proper legal standard.

### I.

The claimant, Barbara Davis, is fifty-eight years old. She has a high school education plus one year of business school. She suffers from coronary artery disease with status post bypass graft times four, adult onset diabetes mellitus, mild vascular labyrinthitis, obesity, borderline hypertension, dizziness from Meniere's disease, and depression, together with pain and discomfort attendant to the above.[1] Her complaints also include weakness and pain in her back, hip, and legs, ringing in her ears, blurred vision, and chest pains that are not necessarily brought on by exertion. She last worked in October of 1979.

Davis filed an application for a period of disability, disability insurance benefits, and supplemental security income on May 21, 1980, due to heart disease, diabetes, and hardening of the arteries, claiming a disability onset date of October 9, 1979.[2] The application was denied initially and upon reconsideration by the Social Security Administration. On January 1, 1981, Davis requested a de novo hearing before an administrative law judge ("ALJ"). The medical evidence received at the hearing included the hospital and clinic records covering

---

[1]. This is the list of Davis' medically determinable impairments found by the administrative law judge. Record Vol. II at 15.

[2]. Davis had previously filed an application for disability benefits and supplemental security income on November 30, 1979, which had been denied.

Because the relevant law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental income benefits, we treat the two claims together. *See* 20 C.F.R. §§ 416.901 *et seq.* (1983); *Rivers v. Schweiker,* 684 F.2d 1144, 1146 n. 1 (5th Cir.1982).

her visits prior to bypass surgery, the surgery itself, and her subsequent recovery. A vocational expert testified at the hearing as did Davis herself. Following the hearing, the ALJ arranged for physical and mental consultative examinations. On October 26, 1982, after considering the results of these examinations and the evidence adduced at the hearing, the ALJ issued a decision, concluding that Davis was not entitled to a period of disability and disability insurance benefits or to supplemental social security income.

The ALJ found that Davis met the special earnings requirements as of the alleged disability date and will continue to meet them at least through December 1984. The ALJ listed Davis' medically determinable impairments, describing them to be of "a mild to moderate degree and nature" and indicating that the impairments prohibited Davis from performing other than light work. The ALJ found that Davis' "medical condition does not significantly limit her ability to perform the basic work-related functions of sedentary to light work after July 1980, and [she] has the residual functional capacity necessary for such work," concluding that "[t]his is not such a 'severe' limitation within the meaning of the Social Security Regulations, specifically Section 404.1520(c) or 416.920(c) as to constitute disability, since claimant's ability to perform such basic work-related activities is not significantly impaired." Record Vol. II at 15. The ALJ found that Davis' past relevant work included light unskilled work as a maid and as a nutritional aide and light to medium semi-skilled work as a supervisor of motel laundry operations. He indicated that Davis retained skills from her previous semi-skilled job

that are transferable to other semi-skilled jobs and that Davis' ability to perform work-related functions is not significantly affected by her nonexertional impairment of depression. Considering Davis' maximum sustained work capacity, age, education, and work experience in the light of the medical-vocational guidelines outlined in Appendix 2 of 20 C.F.R. pt. 404, subpt. P (1983), the ALJ determined that Davis was "not disabled."[3] He concluded that Davis "failed to establish that her impairments ... prevented her from engaging in former work or any sedentary or sedentary to light substantial gainful semi-skilled activities for any continuous 12-month period beginning on October 9, 1979, through the date of this decision and was not under a 'disability' within the meaning of that term under the Social Security Act, as amended." Record Vol. II at 17.

The Appeals Council declined review of the ALJ's decision, which then became the final decision of the Secretary. Davis instituted the instant action in the United States District Court for the Eastern District of Texas to obtain review of the Secretary's decision pursuant to · 42 U.S.C. § 405(g). Finding substantial evidence in the record to support the Secretary's decision, the district court granted the Secretary's motion for summary judgment and affirmed the Secretary's decision. Davis appeals.

On appeal, Davis contends that (1) the Secretary's decision that Davis retains the ability to perform work-related functions is not supported by substantial evidence since a finding of disability is mandated in her case under the listed impairments of Appendix 1,[4] (2) the Secretary's application of

---

3. The ALJ made specific reference to 20 C.F.R. §§ 404.1569, 416.969 and 20 C.F.R. pt. 404, subpt. P, §§ 201.07, 201.15, 202.07, 202.15.

4. 20 C.F.R. pt. 404, subpt. P, app. 1 (1983). Appendix 1 is a listing of certain severe impairments that constitute automatic approval of the disability claim without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d). One does not inquire whether a claimant has an impairment that meets or equals those listed in Appendix 1 until

it has been determined that the claimant is not engaged in substantial gainful activity and has a severe impairment. Substantial gainful activity is defined as "work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510; *see also id.* § 404.1572. There is no dispute that Davis was not engaged in substantial gainful activity as of her alleged onset-of-disability date. Hence, the

the residual functional capacity provisions [5] was improper since her condition is severe enough to establish a disabling condition on medical evidence alone, and (3) the case should be remanded because the ALJ failed to obtain a psychological examination as recommended in the psychiatric consultative report and he failed to obtain other medical testing that would aid in determining whether Davis was disabled.

## II.

■ We have recently had occasion to reexamine the proper legal standard to be applied in determining whether an ailment constitutes a severe impairment. *Estran v. Heckler,* 745 F.2d 340, 340–42 (5th Cir. 1984); *see also Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984); *Chico v. Schweiker,* 710 F.2d 947 (2d Cir.1983). We determined that the prevailing definition of a "non-severe impairment" [6] must be read in the light of the Secretary's 1968 regulations defining severe impairment because "the new terminology was intended solely to clarify, not to change, the definition of 'severe impairment.'" *Estran,* 745 F.2d at 340. The 1968 regulations defined a non-severe impairment as "a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." 20 C.F.R. § 404.1502(a) (1968). This continues to be the standard

in determining whether a claimant's impairment is severe. "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Estran,* 745 F.2d at 341 (quoting *Brady,* 724 F.2d at 920).

■ Our review of the ALJ's determination that Davis' impairments were not severe under the existing regulations causes us to question whether his determination was informed by the 1968 standard.[7] We also question whether the district court's review of the ALJ's determination was informed by the 1968 standard. If, in making his decision, the ALJ was guided by the existing regulations without considering the 1968 standard then his decision constitutes the application of the wrong standard in determining whether Davis' impairments were severe.

■ After determining that Davis' impairments were not severe, the ALJ went on to examine her ability to perform past relevant work or other work in the national economy commensurate with her maximum sustained work capacity, age, education, and work experience. We question why the ALJ continued his analysis. We note that the Secretary follows a sequential pro-

initial inquiry is whether Davis' impairments are severe.

5. Residual functional capacity is a medical assessment of the particular types of work a claimant may be able to do despite her impairments. 20 C.F.R. § 416.945(a); *Rivers,* 684 F.2d at 1159.

6. 20 C.F.R. § 416.921(a) provides:

(a) *Non-severe impairment:* An impairment is not severe if it does not significantly limit your physical or mental ability to do basic work activities.

7. The ALJ's decision conformed to the language of sections 404.1520(c) and 416.920(c) in finding that Davis' ability to perform "basic work-related activities is not significantly impaired." 20 C.F.R. § 1520(c) provides:

(c) *You must have a severe impairment.* If you do not have any impairment(s) which

significantly limits your physical or mental ability to do *basic work activities,* we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

(Emphasis added.) The language of section 416.920(c) is nearly identical. Sections 404.-1520(c) and 416.920(c) must be read with § 416.921(a), which sets out the definition of a "non-severe impairment" as one that does not "significantly limit [a person's] physical or mental abilities to do basic work activities." *See supra* note 3; *see also* 20 C.F.R. § 416.921(b) (defining "basic work activities"). In making a determination as to the severity of a claimant's impairments, these regulations must be read in the light of the 1968 regulations. *Estran,* 745 F.2d at 341.

cess in evaluating whether a claimant is disabled and that a finding that a claimant is disabled or not disabled at any point in the review pretermits further review. *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir.1984) (citing 20 C.F.R. § 416.920(a)). Having determined that Davis' impairments were not severe, albeit under what might have been the wrong legal standard, the ALJ presumably need not have considered whether Davis was capable of performing other types of work. *See id.* (citing 20 C.F.R. § 416.920(c)).

We vacate the order of the district court affirming the Secretary's decision and remand the case to the district court with instructions to remand the case to the Secretary for explicit consideration of the facts in the light of the proper standard after considering such further evidence as may be offered by either Davis or the Secretary.[8]

VACATED and REMANDED.

---

**8.** On remand, the Secretary should evaluate Davis' contention that there is a need for further medical and psychiatric testing before an accurate determination as to disability can be made. Davis argues that it was reversible error for the ALJ not to obtain a complete psychological examination when a psychiatrist, in his consultative report, suggested that further "[p]sychologi-cal testing might prove some value in determining whether or not she has any organic brain deterioration." Record Vol. II at 279. Davis also argues that the ALJ should have ordered additional medical testing to determine the existence and extent of Meniere's syndrome and vascular labyrinthitis. We do not offer any views as to whether such testing is warranted.