Melvin ALBRITTON,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–4535
(Summary Calendar).

United States Court of Appeals, Fifth Circuit.

Dec. 8, 1989.

Dale H. McDavitt, McComb, Miss., for plaintiff-appellant.

L.A. Smith, III, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for defendant-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Melvin Albritton appeals the district court's affirmance of the Secretary of Health and Human Services' decision that he was not disabled. Finding that the Secretary erroneously considered Albritton to be literate, leading to a misapplication of the Medical–Vocational Guidelines, we affirm in part and reverse in part and remand for further proceedings.

## Background

This case involves Albritton's fourth application for disability benefits following a heart attack in November 1981, which marked the end of his work as an auto mechanic. The first three applications were denied. The fourth application initially was denied; however, on reconsideration, Albritton was found disabled as of May 1, 1986. Contending that his disability began earlier Albritton requested a hearing. The Administrative Law Judge (ALJ), finding that the hearing put the existence of a disability at issue, asked a physician who had never examined Albritton to review his medical records. The physician, Dr. John D. Wofford, opined that Albritton's condition did not meet a listed impairment. Agreeing with Dr. Wofford, the ALJ applied the Secretary's Medical–Vocational Guidelines to conclude that Albritton was not disabled.

After exhausting his administrative remedies, Albritton sought judicial review pursuant to 42 U.S.C. § 405(g). The matter was referred to a magistrate. While his appeal was pending Albritton moved to remand his case to the Secretary for consideration of a newly obtained psychological evaluation, which found mild mental retardation. The magistrate recommended af-

firmation of the Secretary's decision and denial of Albritton's motion to remand. The district court adopted the magistrate's recommendations. Albritton timely appealed.

## Analysis

Our review of final decisions of the Secretary is a search for substantial evidence and legal error. *Bray v. Bowen,* 854 F.2d 685 (5th Cir.1988). Thus guided, we find that the Secretary misapplied the relevant regulations.

The Secretary has adopted a five-step sequential process to determine whether a claimant is disabled. The first inquiry is whether the claimant is engaged in substantial gainful activity; if so, he is not disabled. The second inquiry is whether the claimant has a severe impairment; if not, he is not disabled. The third inquiry is whether the severe impairment is of the requisite duration and meets or equals an impairment contained in the Secretary's Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1 (1988); if so, the claimant is *per se* disabled. The fourth inquiry, relevant only where the claimant's impairment does not meet a listed impairment, is whether the claimant is capable of doing past relevant work; if so, he is not disabled. The fifth inquiry is whether the claimant is able to engage in other work available in the national economy; if not, he is disabled. 20 C.F.R. § 404.1520; *Martin v. Heckler,* 748 F.2d 1027 (5th Cir.1984). The Secretary answers the fifth inquiry by applying his Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, App. 2, §§ 404.1520(f), 404.1569.

The state agency charged with making the initial disability determination found Albritton disabled at the third step of the process; it determined that Albritton had ischemic heart disease with chest pains of cardiac origin meeting Listing 4.00E. The Secretary, on the basis of Dr. Wofford's report, disagreed. However, the Secretary did find that Albritton was incapable of performing his past work as an auto mechanic and proceeded to the fifth step of the process, application of the Secretary's Medical–Vocational Guidelines, to determine whether Albritton was capable of performing work available in the national economy. It was in the application of these guidelines that the Secretary erred.

Finding that Albritton retained the capacity to do light work, the Secretary turned to Table No. 2 of the Medical–Vocational Guidelines and further determined that: (1) having turned 50 years old on April 21, 1985, Albritton was closely approaching advanced age; (2) the issue of transferability of Albritton's work skills was "not material;"[1] and (3) Albritton had a marginal education, which placed him in the education category of "limited or less." As a result of these determinations, the Secretary applied Rule 202.10, leading to a decision of "not disabled." On the record in this case, the Secretary's finding that Albritton had a marginal education and the consequent application of Rule 202.10 are inconsistent with the regulations.

■ The correct application of the regulations to the evidence requires a finding that Albritton was illiterate. The regulations define illiteracy as "the inability to read or write." 20 C.F.R. § 404.1564(b)(1). "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." Id. The evidence places Albritton squarely within this definition.

Despite a fourth-grade education, both Albritton and his wife testified that he could neither read nor write, but could only sign his name. The record contains this unchallenged colloquy:

1. In light of his selection of Rule 202.10 to decide Albritton's case, the Secretary's finding of non-materiality apparently means that Albritton effectively was unskilled because his auto mechanic skills were not transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.10. The pertinent regulation, 20 C.F.R. § 404.1565(a), provides: "If you cannot use your skills in other skilled or semi-skilled work, we will consider your work background the same as unskilled."

Q: What's your activities during the day? Do you do anything around the house or do you read?

Albritton: Watch television.

Q: You just watch television? You can't read?

Albritton: No, sir.

.    .    .    .    .

Q: If he gets a letter from somebody, who reads it to him?

Mrs. Albritton: I do.

The Albrittons' latest testimony is consistent with their testimony at hearings in connection with earlier applications, during which the ALJ pursued the matter of Albritton's reading ability.

Q: Now you did work as an auto mechanic.... And how did you break down the work? You did the mechanic part of it and she [Mrs. Albritton] did the ... bookkeeping?

Albritton: Yes, sir. Yes, she done all the making of the tickets and all the bookkeeping work. I done all the mechanic work.

Q: All right. How did you keep up with changes in the way that automobiles were made? ... Usually you read a manual or something, how did you handle that?

Albritton: Well, anything that was come out new, I mean if there was any reading, she done it.

Q: She'd read it to you?

Albritton: Yes, sir.

The Secretary apparently concluded that Albritton had a marginal education because he had four years of formal schooling. That conclusion was erroneous. The regulations provide:

> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your ... impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities.

20 C.F.R. § 404.1564(b).

Albritton's formal schooling was no longer meaningful and did not represent his educational abilities in the face of uncontradicted evidence that he was functionally illiterate. *See Dollar v. Bowen*, 821 F.2d 530 (10th Cir.1987) (despite eighth-grade schooling, claimant's education cannot be classified as "limited or less" when uncontradicted evidence is that claimant could not read or write). The record otherwise lacks substantial evidence to support a finding of literacy.[2]

Our determination that Albritton was illiterate precludes application of Rule 202.-10, which requires literacy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.10. On remand, the Secretary should reapply the Medical–Vocational Guidelines, taking into account Albritton's illiteracy. We note that explanatory section 202.00(d) to Table 2 indicates a finding of disability where a claimant, like Albritton, is closely approaching advanced age, lacks readily transferable skills and faces further limits on his vocational scope due to illiteracy.

■ We agree with the district court in all other respects, including the refusal to remand the case for consideration of the psychologist's report because Albritton did not show good cause for failing to obtain such a report earlier. 42 U.S.C. § 405(g); *Bradley v. Bowen*, 809 F.2d 1054 (5th Cir. 1987).

---

**2.** The only material in the nearly 500–page record that conceivably might be taken as evidence that Albritton could read or write was a question on Social Security Administration forms in which the interviewer was asked to check various items to indicate if "any difficulty was observed." Included on the checklist were "reading" and "writing" and in several instances, the interviewer checked "No." The form does not indicate whether the interviewer determined whether Albritton had difficulty reading or writing; it is silent as to whether Albritton's literary skills were tested. This form has little probative value.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for a return to the Secretary for further proceedings consistent herewith.