Lynette HENSON

v.

**Jo Anne B. BARNHART, Commissioner of Social Security Administration**

No. 1:03 CV 862.

United States District Court,
E.D. Texas,
Beaumont Division.

April 29, 2005.

William Fred Krause, III, Dallas, TX, for Plaintiff.

Steven A. Ford, Anoka, MN, for Defendant.

### *MEMORANDUM AND ORDER OVER-RULING PLAINIFF'S OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

CRONE, District Judge.

This appeal from an adverse administrative decision of the Commissioner of Social Security Administration was referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable laws and orders of this court. The magistrate judge recommends that the court affirm the Commissioner's decision. Plaintiff filed timely objections which require *de novo* review. *See* FED.R.CIV.P. 72(b).

Plaintiff's indistinct objections argue two points regarding her alleged disability due to *depression*, but neither can be sustained. First, and contrary to plaintiff's argument, the administrative law judge expressly found that plaintiff's alleged depression is not a severe impairment. ALJ Meyer's decision contains the following explicit finding:

> The claimant has been diagnosed with reflux, **depression**, thyroid, and a hernia, which are medically determinable **but not severe impairments**.

Tr. 18 .(emphasis added). Second, a reviewing court cannot re-weigh conflicting evidence and substitute its own findings in order to set aside an administrative law judge's factual determination as to whether a claimed impairment is severe.

Next, and continuing on the subject of plaintiff's *depression*, plaintiff argues that the magistrate judge erroneously rejected plaintiff's argument that an administrative law judge must state and discuss reasons why plaintiff does not meet or equal presumptively-disabling impairments listed in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"). The magistrate judge correctly concluded, however, that this case is not an appropriate occasion for considering whether to implement such a rule. Under administrative sequential analysis required by regulation, Step 3 analysis of any impairments that does not survive Step 2 analysis is foreclosed. When an alleged impairment is determined to be not a severe Step 2, further analysis of the impairment terminates. The magistrate judge cited and correctly applied *Davis v. Heckler,* 748 F.2d 293, 296 n. 4 (5th Cir.1984), wherein the governing court of appeals instructed lower trial courts that consideration of impairments at Step 3 occurs only when the adjudicator determines at Step 2 that a claimant has a severe impairment. There was no need for further consideration or discussion of that alleged impairment at Step 3.

Finally, plaintiff raises a similar objection with respect to another allegedly disabling impairment, *sleep apnea*. Since the

Commissioner found this impairment severe, Step 3 analysis was required. Nevertheless, for reasons carefully articulated by the magistrate judge, plaintiff's argument that the administrative law judge was required to discuss at length why plaintiff's sleep apnea does not meet stringent Listings criteria must fail.

The magistrate judge accurately determined that under arcane administrative regulations, applicants must satisfy Listings criteria with respect to respiratory disorders, including sleep apnea, only by proving that they meet Listings criteria for certain cross-referenced impairments. The only such cross-referenced impairments for sleep apnea argued as applicable to plaintiff was Listing 12.02, which relates to organic mental disorders. For reasons stated in the preceding paragraph, no Step 3 analysis was permitted or proper with respect to plaintiff's depression. Accordingly, due to mootness, this case is not an appropriate vehicle for deciding whether the Commissioner must articulate reasons for Step 3 findings.[1]

### ORDER

It is therefore **ORDERED** that plaintiff's objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendation.

1. The administrative law judge's decision did not omit completely a discussion of why plaintiff's severe impairments did not meet Listing criteria. The administrative law judge stated that plaintiff's severe impairments do not meet or equal a Listing based on "State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." Tr. 18.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

Plaintiff seeks judicial review of the Commissioner of Social Security Administration's ("SSA") decision denying her application for Disability Insurance Benefits ("DIB").[1] This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R.1(H) for the Assignment of Duties to United States Magistrate Judges, and Beaumont General Order 98–6.

### I. JUDICIAL REVIEW

■ Title 42 U.S.C. § 405 authorizes United States district courts to conduct judicial review of the Commissioner's final decisions regarding applications for social security benefits. 42 U.S.C. § 405 (2004). Judicial review is limited. The court's role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir.1995); *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). If proper principles of law were applied, and if the Commissioner's decision is supported by substantial evidence, the Commissioner's

1. The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled. See* 42 U.S.C. § 423(a); *see also Mathews v. De Castro,* 429 U.S. 181, 186, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 2100 (14th ed.2001).

findings are conclusive and must be affirmed. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 206, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *see also* 42 U.S.C. § 405(g).

By local orders, complaints seeking judicial review of administrative decisions denying applications for Social Security benefits are treated as *appeals.* The party seeking review is required to specify points of alleged error, and to submit a brief containing legal arguments directed to those points. The Commissioner is ordered to respond. The court limits its judicial review to points argued in the briefs. *See* Order Directing Filing of Briefs (Docket No. 7) and Notice to Parties in Social Security Appeal Cases (Docket No. 6).

## II. PROCEEDINGS

Plaintiff, Lynette M. Henson, a 44–year-old female, applied for Disability Insurance Benefits on November 29, 2001. Tr. 87. Plaintiff claimed onset of disability as of December 17, 2000, due to (1) obstructed sleep apnea, (2) gastroesophageal reflux disease, (3) esophageal candida, and (4) an ulcer. Tr. 107. On her application form, she responded to a question regarding her medical records by stating that she was "seeing a therapist" with respect to "emotional or mental problems that limit [my] ability to work." Tr. 109.

Plaintiff's claim was denied initially and upon reconsideration, whereupon plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 68. In that request, plaintiff stated that she disagreed with the administrative determination of her claim because "I am unable to work due to all my illness." *Id.* In listing alleged illnesses, she included "Depression." *Id.*

ALJ Gerald L. Meyer conducted an evidentiary hearing on April 23, 2003, at which plaintiff, represented by counsel, appeared and testified. In addition, ALJ Meyer received testimony of a vocational expert ("VE"), Phillip Roddy.[2] The remaining evidence consisted of written clinical notes and reports of treating sources,[3] an ad hoc evaluative report of one examin-

---

**2.** Vocational Experts are utilized by the ALJ to "assess whether jobs exist for a person with the claimant's precise abilities." *Gilliam v. Califano,* 620 F.2d 691, 694 n. 1 (8th Cir.1980). The VE's testimony must: (1) assess the effect of any limitation on the range of work at issue; (2) advise whether the impaired person's residual functional capacity permits him or her to perform substantial numbers of occupations within the range of work at issue; and, (3) identify jobs if they exist and provide a statement of the incidence of such jobs in the region in which the person lives. *Ellison v. Sullivan,* 921 F.2d 816 (8th Cir.1990).

**3.** A treating source is a source who can provide evidence to establish an impairment. 20 C.F.R. § 404.1513(a). Under the regulations, acceptable treating sources include (1) licensed physicians; (2) license or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists; and (5) qualified speech-language pathologists. *Id.*

ALJ Meyer considered treating source evidence from Dr. Traci Jakab, Dr. Russell Jacobe, Dr. Anthony Popek, Dr. John K. Yoo, Dr. Todd J. Swick, and Counselor Casey–Ducharme, all of whom saw or treated plaintiff. Drs. Jakab and Jacobe treated plaintiff for various ailments, primarily sleep-related, commencing on December 15, 2000. Dr. Popek has also treated plaintiff for various ailments commencing December 14, 2000. Dr. John Yoo treated plaintiff for her ear, nose, and throat problems since December 14, 2000, and performed surgery on plaintiff in an attempt to correct plaintiff's deviated nasal septum. Dr. Swick treated plaintiff from December 23, 2000 until April 25, 2001 for various sleep-related problems. Finally, Counselor Casey–Ducharme saw plaintiff upon referral from Dr. Jakab and conducted periodic counseling sessions from November 12, 2001 until March 8, 2002.

ing physician,[4] two ad hoc evaluative reports from reviewing physicians,[5] and emergency room records.[6]

On May 14, 2003, ALJ Meyer issued a decision denying plaintiff's application. Tr. 22. Plaintiff requested the Appeals Council to reconsider. When the Appeals Council denied plaintiff's request on July 18, 2003 (Tr. 7), ALJ Meyer's decision became the Commissioner's final decision. Plaintiff timely initiated suit in the federal court on September 16, 2003.

### III. ADMINISTRATIVE DECISION

#### A. Sequential Evaluation

Regulations require a five-step sequential analysis for initial disability determinations.[7] When a claimant is found not dis-

---

4. An examining physician is a physician who has performed at least one discrete individual examination of the plaintiff. Generally, the Commission gives more weight to the opinion of a source who has examined the plaintiff rather than the opinion of a source who has not performed such an examination. *See* 20 C.F.R. § 404.1527(d)(1).

ALJ Meyer considered evidence from Dr. P.K. Roy, M.D., who conducted a psychiatric examination plaintiff on February 18, 2002 at the request of the Social Security Administration. Tr. 299.

5. A reviewing physician is a medical consultant who "is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or for [the Social Security Administration] when [the Administration makes] disability determinations [itself]." 20 C.F.R. § 404.1616(a)(2003). A medical consultant must be "a licensed physician (medical or osteopathic), a licensed optometrist, a licensed podiatrist, or a qualified speech-language pathologist.... [and] must meet any appropriate qualifications for his or her specialty as explained in § 404.1513(a)." 20 C.F.R. § 404.1616(b) (2003).

ALJ Meyer considered evidence from two reviewing physicians. Dr. Farrell A. Hillman, M.D. reviewed plaintiff's records on March 12, 2002 (Tr. 303), and Dr. Mehdi Sharifian, M.D. reviewed plaintiff's medical records on June 19, 2002 (Tr. 384).

6. For purposes of this action, the relevant medical evidence relates to plaintiff's alleged mental impairment due to depression. A succinct summary of that evidence is as follows:

| Source | Conclusion |
| --- | --- |
| P.K. Roy, M.D. Examining physician | "Mood is moderately depressed. Eye contact is fair. Speech is clear." Tr. 300. Memory is intact. *Id.* "Intellectual functioning is average ... concentration is fair." *Id.* Diagnosis: "Major depression, moderate first episode, no psychosis," GAF score of 50. Tr. 301. |
| Traci Jakab, M.D. Plaintiff's treating physician | "Tearful ... depression ... advised to see psych counseling." Tr. 447. |
| Catherine Casey–Ducharme, M.Ed., L.P.C., L.M.F.T. Plaintiff's treating counselor | "Experiencing depressive and anxious symptoms in response to stressors. Her difficulty in coping effectively is exhibited in emotional lability, irritability, fatigue, concentration difficulties, and low motivation. Her symptoms seem to be exacerbated by her inability to sleep well ... Individual therapy is recommended ... Medication may be indicated if symptoms do not improve with therapy." Tr. 296. |
| Farrell A. Hillman, M.D. Reviewing/ Consultative physician | "Impairment(s) not severe." Tr. 303. "Major depression, *moderate first episode.*" Tr. 306, 315. |
| Mehdi Sharifian, M.D. Reviewing/ Consultative physician | "Impairment(s) not severe ... Coexisting Nonmental Impairment(s) that Requires Referral to Another Medical Specialty." Tr. 384. "Major depression, moderate first episode." Tr. 387. |

7. The five steps are as follows:

   1. The Commissioner ascertains *whether the applicant is currently engaging in substantial gainful activity.* (If so, a finding of non-disability is entered and the inquiry ends.)
   2. The Commissioner determines *if the applicant's impairment or combination of impairments is severe,* that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to

abled at any step, remaining steps are not considered. 20 C.F.R. § 404.1520 (2004). The burden of proof is on a claimant at every stage, except for the initial inquiry at Step 5. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir.2002); *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir.1987).

The five-step sequential analysis for determining applications for benefits based on disability is approved by courts. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

## B. Decision

ALJ Meyer determined at Step 2 that plaintiff carried her burden of proving that she has "severe impairments" within the meaning of the regulation. Specifically ALJ Meyer determined that plaintiff's arthritis and sleep apnea constitute severe impairments. Tr. 18. However, ALJ Meyer concluded at Step 3 that these impairments do not meet, equal or exceed certain presumptively disabling impairments catalogued in 20 C.F.R. Part 404, Subpt. P, App. 1, popularly known as "the Listings." [8] Tr. 21, Finding 4.

This conclusion required ALJ Meyer to determine plaintiff's "residual functional capacity" before addressing the remaining steps.[9] ALJ Meyer stated that he carefully considered all of the medical opinions in the record. Tr. 21, Finding 6. He then concluded that plaintiff has residual functional capacity for light work with limitations precluding climbing ropes, ladders, and scaffolds and precluding exposure to dangerous or moving machinery or unprotected heights. Tr. 21, Finding 7.[10] Rely-

do basic work activities. (If not, the inquiry ends and a finding of non-disability is entered.)

3. The Commissioner determines *whether the severe impairment equals or exceeds those in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 (2004)* ("the Listings"). (If so, disability is presumed and benefits are awarded.)

4. The Commissioner determines *whether the impairment prevents the individual from engaging in his regular previous employment.* (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.) *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).

5. The Commissioner determines *whether other work exists in the national economy which the applicant can perform.* (If the Commissioner establishes that an applicant can perform alternative employment, the burden shifts back to the applicant to show he cannot perform the alternative labor. *See id.; Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986); 20 C.F.R. § 404.1520(a)—(f) (2004)).

8. Appendix I, Subpart P, Part 404 of the Regulations lists impairments and indicators of medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2004). A person whose impairment meets or equals an impairment in the Listing is presumptively disabled. 20 C.F.R. § 404.1520(d) (2004); Soc. Sec. R. 88–3c (1988). *See* discussion at § V.B.2.A, *infra*.

9. Residual functional capacity (RFC) is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1) (2004). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

10. "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [plaintiff] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b) (2002).

ing on VE Roddy's testimony, he found that plaintiff's residual functional capacity for light work with the above limitations does not preclude her from performing past relevant work-related activities as an operations monitor/dispatcher, a data entry worker, a credit investigator/quality control worker, and loan processor. Tr. 21, Finding 8.

Under the sequential analysis procedure, the inquiry ended at that point. ALJ Meyer reached his decision at Step 4 by finding that "the claimant's medically determinable arthritis and sleep apnea do not prevent the claimant from performing her past relevant work." Tr. 21, Finding 9. A finding of residual functional capacity to perform past relevant work compelled ALJ Meyer to conclude that plaintiff "was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision." Tr. 21, Finding 10 (citing 20 C.F.R. §§ 404.1520(e)). Because plaintiff is not under a disability as defined in the Social Security Act, ALJ Meyer denied plaintiff's DIB application. Tr. 22.

### C. Critical Finding

The critical finding for this appeal is ALJ Meyer's Step 2 findings regarding the nature and extent of plaintiff's impairments, and specifically his rejection of plaintiff's alleged depression as a severe impairment. This resulted in no subsequent consideration at Step 3 as to whether plaintiff's alleged depression met or was medically equivalent to any of the presumptively-disabling mental impairments contained in the Listings.

### IV. POINTS OF ERROR

Plaintiff asserts two points of error as follows:

1. The Secretary *(sic)* erred by failing to evaluate the Plaintiff's claim under Step 3 of the five-step sequential evaluation process.

2. The Secretary *(sic)* erred by failing to evaluate the Plaintiff's claim under Step 2 of the same five-step process.

Pl.'s Br. at 1.[11] Plaintiff's supporting arguments, and the Commissioner's responses, are discussed separately in the succeeding sections.

### V. DISCUSSION AND ANALYSIS

Read literally, plaintiff's points assert purely legal errors, i.e., failure to follow applicable law by not conducting sequential analysis required by regulation. Without doubt, an ALJ's failure to conduct a Step 2 analysis or, in an appropriate case, a Step 3 analysis, would constitute wholesale disregard of the governing regulation.[12] When analyzed in this narrow context, plaintiff's points clearly fail. ALJ Meyer's decision reflects that he carefully and expressly engaged in the five-step sequential analysis, precisely as directed by Regulation 20 C.F.R. § 404.1520 (2004).

As briefed, however, it is clear that what plaintiff actually argues is that substantial evidence does not support ALJ Meyers's

---

**11.** Effective March 31, 1995, the functions of the Secretary of Health and Human Services in Social Security cases were transferred to the Commissioner of Social Security. Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296 § 104(c)(1), 108 Stat. 1464.

**12.** Generally, substantive regulations authorized by and consistent with a statute have the force and effect of law, and are binding on federal courts, provided the regulation is "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §§ 706(2)(A), (C); *see Chrysler Corp. v. Brown*, 441 U.S. 281, 295–96, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979); *Batterton v. Francis*, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977).

Step 2 and Step 3 findings. Consequently, for analytical purposes, this report addresses plaintiff's points as though they were articulated in logical analytical order as follows:

1. The Commissioner's finding that plaintiff's depression is not a severe impairment is unsupported by substantial evidence; and

2. The Commissioner's determination that plaintiff's sleep apnea is not a presumptively disabling impairment under the Listings is unsupported by substantial evidence.

## A. Step 2 Finding

At Step 2, ALJ Meyer found that plaintiff has two impairments that qualify as severe, *viz.*, arthritis and sleep apnea. Tr. 18. He listed several other alleged impairments and cited the correct legal standard for evaluating their severity. *Id.* He then expressly declined to categorize those impairments, including depression, as severe. *Id.* Plaintiff challenges the decision not to include plaintiff's depression in the finding regarding severe impairments.

### 1. Competing Arguments

Plaintiff argues that ALJ Meyer erred when he failed to find at Step 2 that she has a "severe" mental impairment. Plaintiff argues that plaintiff's medical evidence and testimony support the contention that her mental impairment is "severe" within the meaning of the regulations. Plaintiff argues that her treating physician (Dr. Jakab), her licensed therapist (Ms. Casey–Ducharme, M.Ed.) and an examining psychiatrist (Dr. Roy), chosen by the Social Security Administration, each diagnosed

plaintiff as depressed. Pl.'s Br. at 11. Further, plaintiff has a GAF score [13] that her counsel argues as showing that she has "serious symptoms" and a "serious impairment in social, occupation or school functioning." Pl.'s Br. at 11. Plaintiff argues that ALJ Meyer failed to consider or ignored this evidence and therefore committed error when finding plaintiff's depression not severe.

The Commissioner responds generally that ALJ Meyer's decision was supported by substantial evidence because plaintiff (a) did not list depression as an impairment on her original application for benefits; (b) did not cite any symptoms of depression or testify about depression as a reason for her inability to work at the evidentiary hearing before ALJ Meyer; and (c) did not seek or receive any treatment for an alleged mental condition prior to filing her application for benefits. Def.'s Br. at 4–5. Moreover, the Commissioner states that substantial evidence supports ALJ Meyer's finding because two separate examinations of plaintiff's medical record, conducted by two different reviewing physicians (Dr. Hillman; Dr. Sharifian), resulted in determinations that plaintiff does not have a severe mental impairment. *Id.* at 5 (citing Tr. 303, 384). Finally, the Commissioner emphasizes that the psychiatric evaluation by Dr. P.K. Roy (Tr. 299) was equivocal because he found that plaintiff is of average intellect with logical, coherent, and relevant thinking, and is capable of caring for her personal needs, doing activities with friends, cooking, and helping with housework. Def.'s Br. at 5.

---

**13.** "GAF" is an acronym for "Global Assessment of Functioning." GAF is a diagnostic tool that examines psychological, social, and occupational functioning to assess a patient's mental health. *Diagnostic and Statistical*

*Manual, Fourth Ed.,* 1994, *available at* http:// www. psych. org/apire/fehb2000 /help/ GAF_scale.cfm. GAF assessments do not take into account impairment in functioning due to physical or environmental limitations. *Id.*

## 2. Principles of Analysis

### A. *Impairments*

The Commissioner unquestionably must consider all potential impairments. *See generally* 20 C.F.R. § 404.1523 (2004); *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999). Since benefits based on disability are awarded only for impairments that render a person unable to engage in substantial gainful activity,[14] an abnormality or condition with no effect on ability to engage in substantial gainful activity is not an impairment for Social Security purposes. Moreover, regulations further clarify the definition of an impairment as an abnormality that *can* be shown by medically acceptable clinical and laboratory diagnostic techniques, and, in fact, *must* be established by medical evidence, as opposed to a claimant's subjective statement or symptoms. 20 C.F.R. § 416.908 (2004). Hence, early on in the process, an ALJ decides whether an *alleged* impairment is an impairment at all within the specialized meaning of that term. If not, there is no error in failing thereafter to mention or analyze it further. *Domingue v. Barnhart,* 388 F.3d 462, 463 (5th Cir.2004).

When an impairment exists, the ALJ must then determine whether the impairment is *severe.* An impairment is severe when its magnitude is sufficient to limit significantly an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Barnhart v. Thomas,* 540 U.S. 20, 24, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003); *Davis v. Heckler,* 748 F.2d 293, 296 (5th Cir. 1984). If any impairment or combination of impairments is determined to be "medically severe," it must be considered throughout the remainder of the disability determination process. 20 C.F.R. § 404.1523 (2004)[15]; *Loza v. Apfel,* 219 F.3d at 393; *Horton v. Barnhart,* No. 1:03cv222 at 14–15 (E.D. Tex. filed Dec. 1, 2004).[16]

### B. *Weighing Evidence*

An ALJ obviously must weigh conflicting or self-serving evidence and make credibility determinations in order to reach a decision. *See, e.g., Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir.2002); *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir.2000); *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990). When an unsuccessful claimant subsequently seeks judi-

---

**14.** Social Security benefits based on disability are awarded only for "impairments" that render a person unable to engage in any substantial gainful activity for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A).

**15.**

"In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to be the basis of eligibility under the law]. *If we do find a medically severe combination of impairments, the combined impact of the impair-*

*ments will be considered throughout the disability determination process."*
20 C.F.R. § 404.1523 (2004) (italics added).

**16.** In *Horton,* and subsequently in *Zeno v. Barnhart,* No. 1:03cv649, 2005 WL 588223, at *4 (E.D.Tex. Feb. 4, 2005), this court observed that Step 2 of the sequential analysis logically involves three distinct inquiries:

- Does an allegedly disabling condition constitute an *"impairment"* as that term is understood in social security parlance?
- If so, does it constitute a *"severe impairment"* as that term is defined by the Commissioner and interpreted by courts?
- If not, does the impairment nevertheless combine with other impairments so that their *cumulative effect* amounts to a *"severe impairment?"*

cial review of the ALJ's evidentiary findings, the court must scrutinize carefully the entire record to determine whether "substantial evidence" exists to support the ALJ's findings. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994), *cert. denied* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995); *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir.1983).

Substantial evidence is more than a scintilla, but less than a preponderance. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992). Evidence is substantial when relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Marcello v. Bowen,* 803 F.2d 851, 853 (5th Cir.1986) (citing *Jones v. Heckler,* 702 F.2d 616, 620 (5th Cir.1983)). Evidence is substantial when it is "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 299–300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939), *cited in* Harvey L. McCormick, *Social Security Claims and Procedures* §§ 672 (4th ed.1991).

■ Substantial-evidence review, therefore, is greatly deferential to the Commissioner's fact findings. *Leggett v. Chater,* 67 F.3d 558, 565–66 (5th Cir.1995).[17] Reversal of the Commissioner's factual determinations is permitted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983). A reviewing court may neither reweigh the evidence in the record, try the issues *de novo,* nor substitute its own judgment for that of the Commissioner. *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994).

### 3. Application

■ This is not a case in which ALJ Meyer had a conspicuous absence of credible choices or no contrary medical evidence regarding plaintiff's depression. Plaintiff testified that she was unable to maintain substantial gainful employment because she is frequently tired as a result of her *sleep apnea,* not because she is *depressed.* Although Dr. Roy diagnosed plaintiff with "major depression" and a GAF score of 50, two examining physicians expressly deemed plaintiff's depression as "not severe." Tr. 303, 384. Plaintiff's treating sources (Dr. Jakab; Counselor Casey–Ducharme) did not provide severity ratings, nor did they relate their findings to plaintiff's ability to perform work-related activities. Finally, even Dr. Roy's reported opinions were equivocal.

Were the issue of severity of plaintiff's depression appropriate for jury determination, the conflicting evidence just mentioned would be enough to justify a refusal to direct a verdict. As such, the evidence supporting ALJ Meyer's finding of no severity is "substantial," as that term of art is understood in judicial parlance. To vacate that finding, the court would have to re-weigh *de novo* the evidence that ALJ Meyer reviewed, and reach a different conclusion. This court simply does not have that option. This point of error, therefore, must fail.

### B. Step 3 Finding

At Step 3, ALJ Meyer found that none of plaintiff's severe impairments, either

---

**17.** "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett,* 67 F.3d at 565–66.

singly or in combination, were "attended by clinical signs of laboratory findings which meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4." Tr. 18. ALJ Meyer stated that, in reaching this conclusion, he had considered the opinions of the State Agency medical consultants who evaluated plaintiff throughout the administrative review process.[18] Plaintiff challenges this conclusion insofar as it declines to recognize plaintiff's sleep apnea as meeting the Listing (which would entitle plaintiff to a favorable decision).

### 1. Competing Arguments

Plaintiff argues that she meets the criteria for a "sleep-related breathing disorder" under Listing 3.00(H). Plaintiff argues that Listing 3.00(H) permits evaluators to find persons suffering from sleep apnea disabled *per se* when they meet the criteria of a disabling organic mental disorder under Listing 12.02. Plaintiff contends that she meets those criteria.

Plaintiff's brief cites various items of medical evidence and portions of her testimony which she asserts collectively satisfy Listing 12.02 factors. Plaintiff contends that ALJ Meyer's adverse decision is unsupported by substantial evidence because he did not explain his analysis that led to the conclusion that plaintiff does not meet Listings criteria. Plaintiff cites *Cotter v. Harris*, 642 F.2d 700, 704–705 (3d Cir. 1981), for the proposition that an ALJ's findings should include a "statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for that decision." Plaintiff argues that the Fifth Circuit employed a similar rule that "effectively [reaches] the same result"

in *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994). Plaintiff also cites *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir.1988) as establishing a requirement that an ALJ must articulate reasons for rejecting evidence clearly favoring the claimant. Plaintiff concludes by arguing that, given this lack of explanation, the Commissioner failed to determine the full extent of plaintiff's impairments as required by 20 C.F.R. § 404.1512(d-f).

The Commissioner responds that plaintiff has not shown that she meets the specified Listing criteria, and suggests that it would be unreasonable to require each ALJ to discuss all criteria for Listings not met. The Commissioner contends that ALJ Meyer stated that he had considered the entire record and found that the medically determinable impairments did not meet or medically equal one of the listed impairments, and that such references to the listings show that ALJ Meyer considered plaintiff's impairments as they related to the Listings in reaching his conclusions. Def.'s Br. at 4 (citing Tr. 18, 21). The Commissioner concludes that ALJ Meyer discussed the relevant evidence and correctly reached the conclusion that plaintiff's impairments did not meet a Listing.

### 2. Principles of Analysis

#### A. *The Listings*

Impairments found in the Listings are those that the Commissioner acknowledges are so severe that they automatically preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d). An exhaustive list of impairments found in 20 C.F.R. Part 404, Subpt. P, App. 1 is designed to function as a short-cut for those claimants with impairments that render

---

**18.** ALJ Meyer cites 20 C.F.R. § 404.1527(f) and Soc. Sec. R. 96–9p (1996) as authority for relying on the opinions of medical consultants, who reached the same conclusion re-

garding whether plaintiff met the criteria for having a listed impairment under 20 C.F.R. Part 404, Subpt. P, App. 1.

them *per se* disabled. *Albritton v. Sullivan*, 889 F.2d 640, 642 (5th Cir.1989); *Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984) (stating that the "appendix relied upon by the district court is a listing of 'per se disabilities' and should be used only if the claimant has satisfied the Secretary that her impairment is severe" and citing *Chico v. Schweiker*, 710 F.2d 947, 951 (2d Cir.1983) and 20 C.F.R. § 404.1525(a), 416.920(d)).

### B. *Burden of Proof*

The claimant's burden is to provide and identify findings that support *all* of the criteria for a Step 3 impairment determination. *McCuller v. Barnhart*, 72 Fed. Appx. 155, 158 (5th Cir.2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.1990); 20 C.F.R. § 404.1526(a). If the plaintiff fails this burden, then the court will find that substantial evidence supports the ALJ's finding. *Selders*, 914 F.2d at 620. Courts acknowledge that the criteria in the Listings are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994).

### C. *Analytical Protocol*

Given the sequential analysis established by regulation and approved by courts, evaluation of impairments under Listings standards is improper without first evaluating the evidence under Step 1 and Step 2. 20 C.F.R. § 404.1520(a). The Fifth Circuit embraces this protocol:

> One does not inquire whether a claimant has an impairment that meets or equals those listed in Appendix 1 until it has been determined that the claimant is not engaged in substantial gainful activity and has a severe impairment.

*Davis v. Heckler*, 748 F.2d 293, 296 n. 4 (5th Cir.1984).

### D. *Respiratory Disorders Listing*

Title 20, C.F.R., Part 404, Subpart P., Appendix 1, § 3.00, *et seq.*, contains the Commissioner's reckoning of Listings-level impairments resulting from respiratory disorders. This section follows a typical Listings format by specifying various respiratory abnormalities, enumerating required physiological bases therefor, and quantifying how extensive the abnormalities must be in a given case to qualify as disabling *per se.*

The Commissioner expressly declined to develop specific criteria for sleep-related breathing disorders. *See* Listing of Impairments Respiratory System, 58 Fed. Reg. 52,346, 52,356 (Oct. 7, 1993). The Commissioner determined that such criteria cannot be established for lack of data supporting a relationship between sleep laboratory studies and an individual's remaining daytime functional capacity. *Id.* Nevertheless, the Commissioner recognized that in some individuals, sleep apnea disorders can produce functional impairment that so affect work activity as to preclude any gainful work. 20 C.F.R. Part 404, Subpt. P, App. 1 § 3.00(H). Given various possible physiological bases, the Commissioner opted to provide cross references to other listings for evaluation of manifestations of breathing disorders. *Id.*

The cross reference relevant to this action reads as follows:

> Daytime somnolence may be associated with disturbance in cognitive vigilance. Impairment of cognitive function may be evaluated under organic mental disorders (12.02).

Thus, when sleep apnea is associated with a cognitive function impairment, the Commissioner supposes that afflicted individuals may be determined disabled *per se* by proving that they satisfy the Listings criteria for organic mental disorders.

### 3. Application

Plaintiff's arguments raise two novel questions. The first advocates modification or extension of existing law to require the Commissioner to articulate at Step 3 the subordinate factual foundations on which ultimate factual conclusions are based, so that a court may know and thereupon meaningfully review that decision. Such a rule is not entirely without precedent, and has intrinsic appeal. The court is placed in an awkward and untenable position of reviewing a contested finding when it is supported only by the Commissioner's *ipse dixit.*[19] On the other hand, given the exhaustive nature of the Listings, the rule advocated by plaintiff could put the Commissioner in a ridiculous position by requiring an intensive amount of detail regarding each possible listing. Courts imposing such a rule would disregard prior jurisprudence declining to require the Commissioner to follow "formalistic rules in his articulation." *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir.1994).

The second novel question—not specifically argued by either side—is whether the Commissioner's cross references to other Listings unwittingly undermines the Commissioner's own sequential evaluation process and contravenes governing circuit precedent regarding analytical protocol. For example, it is foreseeable that a claimant might base a disability claim solely on sleep apnea. It is foreseeable that, as happened here, an ALJ might determine that impairment to be severe. Under the Commissioner's Listing 3.00(H), an evaluator might then perceive the claimant's "daytime somnolence" to be "associated with disturbance in cognitive vigilance," and then proceed to evaluate "impairment of cognitive function ... under organic mental disorders," specifically Listing 12.02. In substance, an ALJ would inquire whether the claimant's mental impairment meets or equals Listings criteria for organic mental disorders without first determining—at Step 2—whether the claimant has a severe mental impairment.

■ Here, it is unnecessary for the court to address and attempt to resolve either novel question. Plaintiff specifically claimed a mental impairment—*depression*—as a basis for her disability at the outset. ALJ Meyer engaged in the required sequential analysis, and determined at Step 2 that plaintiff's depression does not constitute a severe impairment. That determination is supported by substantial evidence. That determination precluded further analysis of plaintiff's mental impairment at Step 3.

ALJ Meyer determined plaintiff's *sleep apnea* to be a severe impairment. He was obliged, therefore, to consider *that impairment* at Step 3. As discussed earlier, there are no specific criteria for Listings-level sleep apnea. Instead, there are cross references to other Listings for evaluation of various manifestations of sleep apnea. The only Listing asserted by plaintiff as applicable in her case is the organic mental impairment Listing 12.02. However, evaluation under that Listing was not—in plaintiff's case—an available option given ALJ Meyer's earlier Step 2 finding that plaintiff's alleged mental impairment is not severe. The Fifth Circuit's opinion in *Davis v. Heckler,* 748 F.2d 293 (5th Cir. 1984), stated that a plaintiff must meet Steps 1 and 2 before proceeding to Step 3.

---

19. In *Fisher v. Barnhart,* 1:03cv648, 2004 WL 3237346, at *2 (E.D.Tex. Dec. 21, 2004), the court stated that the Commissioner has a duty to at least produce a decision that can be subject to judicial review: "[t]he adjudicator's decision must be sufficient for meaningful judicial review." *Id.* at *9 (citing *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir.2000) and *Wirth v. Barnhart,* 318 F.Supp.2d 726, 743 (E.D.Wis.2004)).

Here, plaintiff did not meet Step 2 with regard to depression.

Even if one assumes *arguendo* that at Step 3 an ALJ generally should discuss in detail the reasons why a claimant does not meet listed impairments, ALJ Meyer did not err in failing to discuss reasons why plaintiff does not meet Listing 12.02. So far as plaintiff's alleged mental impairment is concerned, ALJ Meyer properly never reached Step 3. The mental impairment inquiry ended at Step 2, and thus mooted consideration of sleep apnea under the organic mental impairment Listing 12.02.

### VI. RECOMMENDATION

Because none of the plaintiff's points of error should be sustained and plaintiff otherwise has not offered adequate reason for remand, the Commissioner's decision should be affirmed.

### VII. OBJECTIONS

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendation contained in this report within 10 days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations.

March 17, 2005.